UNITED STATES of America, Appellee,

v.

Dennis Duane LARGE, Appellant.

No. 83–1490.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 14, 1983.
Decided March 22, 1984.

James M. Rosenbaum, U.S. Atty., Donald M. Lewis, Asst. U.S. Atty., D. Minn., Min-

neapolis, Minn., Gwen Werner, Legal Intern, for appellee.

Law Offices of Redlich & Moldof, P.A. by Hilliard Moldof, Fort Lauderdale, Fla., for appellant, Dennis Large.

Before HEANEY, Circuit Judge, HENLEY, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

McMILLIAN, Circuit Judge.

Dennis Duane Large appeals from a final judgment entered in the District Court [1] for the District of Minnesota upon a jury verdict finding him guilty of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). The district court sentenced appellant to two years imprisonment and a special parole term of four years. For reversal appellant argues that the district court erred in (1) denying his motion to suppress physical evidence, (2) denying his motion for disclosure of the current address of the government's confidential informant and (3) admitting into evidence the $18,500 in cash seized from appellant's suitcase and permitting the government during closing argument to refer to the cash as evidence of a prior drug transaction. For the reasons discussed below, we affirm the judgment of the district court.

*Facts*

On September 20, 1982, at about 3:00 p.m., special agent Ted Love of the Drug Enforcement Administration (DEA), assigned to Minneapolis, received this information from a confidential informant: a white male known as Dennis Large, approximately 5'11" and 260 pounds, with dark brown hair and full beard, was enroute to Minneapolis from Florida that day and would be transporting several ounces of cocaine. Agent Love relayed this tip to special agent James Lewis. Although the source of the following information is unclear from the record, the DEA agents also knew that the courier was travelling by commercial airline and the specific flight. The DEA agents also knew that one of the cities on the courier's itinerary was Chicago; a law enforcement officer in Chicago had given the DEA agents a description of the courier's clothing and confirmed the courier's presence on the flight.

Agents Love and Jerry Kramer waited for the flight by the appropriate gate at the Minneapolis-St. Paul airport. The flight arrived at about 5:00 p.m. The DEA agents identified appellant as the passenger who matched the description given by the confidential informant. According to the DEA agents, appellant also attracted their attention because he wore casual clothing, appeared nervous, walked faster than the other passengers, repeatedly turned his head from side to side as if watching for someone, and stared at special agents Lewis and Thomas Olby as he passed them. Agents Lewis and Olby were positioned in the airport terminal building near the end of the concourse. The DEA agents continued to watch appellant as he proceeded to the baggage claim area. According to the DEA agents appellant appeared unusually nervous in the baggage claim area: his legs were shaking and he kept glancing around the area and again stared at agents Lewis and Olby. Appellant picked up his suitcase and walked out of the airport terminal building. Agent Olby had observed that appellant's suitcase had an Eastern Airlines baggage tag and an identification tag which read in part "D. Large, Ft. Lauderdale."

Agents Lewis and Olby approached appellant just outside the airport terminal building, identified themselves as DEA agents, displayed their credentials, and asked appellant if they could talk to him briefly.[2] Agents Love and Kramer waited

---

1. The Honorable Donald D. Alsop, United States District Judge for the District of Minnesota.

2. At the suppression hearing appellant presented a different version of the encounter. Appellant testified that he was initially approached by one agent, but that within 30 to 40 seconds that agent was joined by three other agents, that he was surrounded by the agents, that agent Lewis told him that he had to answer their questions and that he was not free to leave, and that agent Lewis retained his airline ticket and identification until he signed the receipt for his suitcase. The district court did not credit appellant's version of the circumstances.

several yards away. According to the DEA agents, they did not block appellant's path or surround him or physically touch him. Agent Lewis testified that he told appellant that he was not under arrest and was free to go. In response to the agents' questions, appellant told them that he had in fact travelled from Florida via Detroit and Chicago and produced his airline ticket and identification. Agent Lewis testified that he returned appellant's ticket and identification after briefly examining them, noting that the airline ticket was for one-way transportation and had been paid for in cash.

At this point agent Lewis told appellant that they were conducting a narcotics investigation. According to the agents appellant became increasingly nervous and was perspiring heavily. Agent Lewis asked appellant to consent to a search of his suitcase; appellant refused. Agent Lewis then informed appellant that he (Lewis) felt that there was reasonable suspicion to believe that appellant's suitcase contained drugs and seized the suitcase. Agent Lewis explained that the suitcase would be exposed to a trained drug detection dog and if the dog reacted positively, they would apply for a search warrant. Agent Lewis gave appellant a receipt for the suitcase and baggage claim check and asked appellant for an address or telephone number where he could be reached so the agents could return the bag. Appellant did not reply and then left the airport. Appellant was in fact picked up at the airport by the confidential informant.

The agents took the suitcase to the state law enforcement office at the airport and then called for a trained drug detection dog and handler from the local police department. The dog and its handler arrived approximately an hour later. The suitcase, which had been hidden among other suitcases and packages in the airport lost and found office, was immediately detected by the dog. The agents then applied for and obtained a federal search warrant for controlled substances, paraphernalia, money, records tending to establish constructive possession, and other similar items. The

agents searched the suitcase and found eight ounces of cocaine (57% pure), $18,500 in cash (in wrappers from a bank in the Detroit metropolitan area), papers, and an airline ticket and ticket receipt. The agents arrested appellant later that night.

The district court found that the encounter between the agents and appellant was not an investigatory stop, but if it was an investigatory stop, it was supported by the requisite reasonable suspicion and was reasonable under the circumstances. *United States v. Large*, No. 3–82–Cr–115, slip op. at 3–4 (D.Minn. Dec. 15, 1982) (order). The district court also found that the agents had probable cause to seize appellant's suitcase at the airport. *Id.* at 5.

*Suppression of the Evidence Found in the Suitcase*

■ Appellant first argues that the district court erred in denying his motion to suppress evidence found in the search of appellant's suitcase. Appellant argues that the DEA agents did not possess a "reasonable and articulable suspicion that [he was] engaged in criminal activity," *Reid v. Georgia*, 448 U.S. 438, 440, 100 S.Ct. 2752, 2753, 65 L.Ed.2d 890 (1980), to support the investigatory stop. We disagree. As a preliminary matter, we hold that the stop in the present case was a "seizure" and therefore subject to the protection of the fourth amendment. In *United States v. Wallraff*, 705 F.2d 980, 983–89 & n. 3 (8th Cir.1983), this court characterized a similar airport stop (which involved DEA agents Lewis, Olby and Kramer) as a fourth amendment "seizure" and considered whether the investigatory stop was supported by reasonable suspicion.

■ We have carefully reviewed the record and hold that the district court's determination that the DEA agents had a reasonable suspicion to conduct an investigatory stop was not clearly erroneous. *E.g., United States v. McGlynn*, 671 F.2d 1140, 1143 (8th Cir.1982) (standard of review). Here, the agents had a tip from a confidential informant that a particular individual, identified by name and described in general physical characteristics, would be transporting cocaine from Florida to

Minneapolis by commercial airlines on a specific day. From other law enforcement officers the agents received a clothing description and information that this individual was in fact on a particular commercial flight. This information was corroborated by the agents' observation of appellant's arrival and appearance at the airport. In addition, appellant's apparent nervousness and his pattern of behavior, although as consistent with innocence as with guilt in itself, suggested possible illegal activity to the DEA agents, who were trained and experienced in investigating drug trafficking and drug couriers. These factors, the tip from the confidential informant, the corroboration of the tip by the agents' observation and appellant's behavior at the airport, when considered as a whole and given the specialized training and experience of the agents, clearly provided the agents with a reasonable and articulable suspicion to make an investigatory stop. *See United States v. Wallraff*, 705 F.2d at 988–89. *See also United States v. Berry*, 670 F.2d 583, 598–01 (5th Cir.1982) (banc).

Appellant next argues that if there was reasonable suspicion to make an investigatory detention of his suitcase, the period of detention was too long, citing *United States v. Place*, — U.S. —, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). In *Place* the Supreme Court applied the principles of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), to the detention of personal property and held that

> when an officer's observations lead him [or her] reasonably to believe that a traveler is carrying luggage that contains narcotics, the principles of *Terry* and its progeny would permit the officer to detain the luggage briefly to investigate the circumstances that aroused his [or her] suspicion, provided that the investigative detention is properly limited in scope.

103 S.Ct. at 2644. In *Place* the Supreme Court held that the defendant's luggage was lawfully seized for investigation, but the 90 minute period of detention was unreasonable in the absence of probable cause. *Id.* 103 S.Ct. at 2645. Here, the

period of detention was approximately 60 minutes. Appellant argues that the length of time his suitcase was detained is comparable to that in *Place*. In addition, appellant argues that, as in *Place*, the DEA agents knew the time of appellant's scheduled arrival, had ample time to arrange for the presence of a trained drug detection dog and its handler at the airport and thus could have substantially minimized the intrusion. Moreover, appellant argues that in the present case, as in *Place*, the agents failed to inform appellant of the place to which they were transporting his suitcase, of the length of time that the investigation would take, and of what arrangements would be made for the return of the suitcase if the investigation was negative, *id.* 103 S.Ct. at 2646 (exacerbating factors), although the agents gave appellant a receipt for the suitcase, told appellant that they were going to expose the suitcase to a drug detection dog and would obtain a search warrant if the dog reacted positively and tried to make arrangements for the return of the suitcase.

■ The Supreme Court declined to adopt any outside time limitation for a permissible investigative detention of luggage. *Id.* It is not necessary for us to decide whether *Place* should be applied retroactively and, if so, whether the investigatory detention of appellant's suitcase was too protracted to be reasonable on the basis of reasonable suspicion alone because in the present case the agents had probable cause to detain the suitcase. *See United States v. Armstrong*, 722 F.2d 681, 686 (11th Cir. 1984); *United States v. Wallraff*, 705 F.2d at 989 (detention of suitcase for fifteen minutes based on reasonable suspicion held reasonable, continued seizure of suitcase supported by probable cause). As discussed earlier, the information supplied by the confidential informant, the agents' observation of appellant's arrival and appearance which corroborated the details provided in the tip, the agents' surveillance of appellant's pattern of behavior through the airport, and appellant's answers and increasing nervousness during the investigatory stop would have warranted a reason-

ably cautious person to believe that appellant's suitcase contained contraband. *See generally Draper v. United States,* 358 U.S. 307, 312–13, 79 S.Ct. 329, 332–33, 3 L.Ed.2d 327 (1959); *cf. Illinois v. Gates,* —— U.S. ——, 103 S.Ct. 2317, 2334–35, 76 L.Ed.2d 527 (1983) (police corroboration of most of anonymous informant's tip by independent investigation constitutes probable cause). The agents attempted to confirm their belief by exposing the suitcase to a trained drug detection dog and then obtained a judicial determination of probable cause from a neutral and detached magistrate before searching the suitcase.

Appellant further argues, somewhat inconsistently, that because the DEA agents had probable cause and ample opportunity to obtain a search warrant for the suitcase *before* appellant arrived at the airport but improperly failed to do so, citing *United States v. Craemer,* 555 F.2d 594 (6th Cir. 1977), the district court should have suppressed the evidence in the absence of exigent circumstances. We disagree. The agents did not have probable cause *before* appellant arrived at the airport. Although it is unclear from the record, it appears that the only information that the agents had before they observed appellant arrive at the airport was the confidential informant's tip, the flight number and time of arrival, and the limited information supplied by the Chicago law enforcement officer (description of clothing). This information was not corroborated until the agents observed appellant's arrival at the airport, his appearance, his claiming a suitcase with the identification "D. Large, Ft. Lauderdale," and his pattern of behavior.

*Disclosure of Current Address of Confidential Informant*

■ Appellant next argues that the district court erred in denying his motion for disclosure of the current address of the confidential informant. We find no error. The district court held an in camera hearing in which the confidential informant testified that he believed that his safety and that of his family would be threatened if his current address were disclosed. The

record tends to support the confidential informant's apprehension. *See United States v. Frantze,* 655 F.2d 128, 130 (8th Cir.1981). The confidential informant had been living at the current address for less than a week at the time of the hearing and trial. The government did produce the confidential informant for an interview by defense counsel and agreed to provide defense counsel with the confidential informant's criminal background, if any. Moreover, defense counsel already knew the identity of the confidential informant, his prior cooperation with the DEA in 1974, the fact that the DEA had paid the confidential informant for his assistance in 1974 and in 1982 and how much, and that the confidential informant was in fact the source of the tip. It also appears that appellant and the confidential informant had known each other for about three years. This information permitted defense counsel to adequately cross-examine the confidential informant.

*Admissibility of the $18,500*

■ Appellant next argues that the district court erred in admitting the $18,500 in cash seized from his suitcase and permitting the government during closing argument to refer to the cash as evidence of a prior drug transaction. Appellant argues that the government failed to comply with the pretrial defense motion for disclosure of collateral crime evidence and that the probative value of the cash was substantially outweighed by its prejudicial effect. *See* Fed.R.Evid. 403, 404(b).

We find no abuse of discretion. Much of the evidence establishing that the $18,500 represented the proceeds of a prior cocaine sale involving appellant was developed by defense counsel during cross-examination of the confidential informant and DEA group supervisor David Haight. The evidence of a prior distribution of cocaine was admissible under Fed.R.Evid. 404(b) to prove appellant's intent to distribute and knowledge, was relevant to those material issues, was clear and convincing, was similar in kind and reasonably close in time to the charge at trial, and its probative value

was not substantially outweighed by its prejudicial effect, particularly in view of the quantity, purity and value of the cocaine, evidence which in itself very strongly supported a finding of intent to distribute. *E.g., United States v. Frederickson,* 601 F.2d 1358, 1365 (8th Cir.) (threshold requirements), *cert. denied,* 444 U.S. 934, 100 S.Ct. 281, 62 L.Ed.2d 193 (1979).

Accordingly, the judgment of the district court is affirmed.