**Cesar MOYA, Defendant-Appellant,**

v.

**UNITED STATES of America, Plaintiff-Appellee.**

No. 81–2225.

United States Court of Appeals, Seventh Circuit.

Sept. 21, 1984.

L. Mark Dachs, Miami, Fla., Steven B. Muslin, Steven B. Muslin, Ltd., Chicago, Ill., for defendant-appellant.

Dan K. Webb, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before CUDAHY and COFFEY, Circuit Judges, and SWYGERT, Senior Circuit Judge.

SWYGERT, Senior Circuit Judge.

Cesar Moya was convicted in the United States District Court for the Northern Dis-

trict of Illinois for possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). *United States v. Moya*, 561 F.Supp. 1 (N.D.Ill.1981), *aff'd*, 704 F.2d 337 (7th Cir.), *vacated and remanded*, — U.S. ——, 104 S.Ct. 418, 78 L.Ed.2d 355 (1983). On appeal, a majority of this court held that the three hour detention of Moya's luggage based upon the law enforcement agents' reasonable suspicion that the bag contained contraband did not violate the fourth amendment prohibition against unreasonable searches and seizures. *United States v. Moya*, 704 F.2d 337 (7th Cir.), *vacated and remanded*, — U.S. ——, 104 S.Ct. 418, 78 L.Ed.2d 355 (1983). The Supreme Court vacated and remanded the decision for further consideration in light of *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). In *Place*, the Court held that a ninety minute detention of luggage while awaiting the arrival of a trained narcotics detecting dog based upon less than probable cause violated the fourth amendment. *Id.* 103 S.Ct. at 2645–46.

This court then sought additional briefing from the parties on the following points:

(1) Whether there was probable cause for the seizure of Moya's shoulder bag?

(2) Whether there was any legal justification for the warrantless seizure of the clear plastic bag from Moya's shoulder bag, in particular whether the plastic bag fit within the "plain view" exception to the warrant clause?

(3) Whether the three hour detention of Moya's shoulder bag could be persuasively distinguished from the ninety minute detention that occurred in *Place?*

We now hold that the government waived the issue of probable cause by failing to raise it either at trial or on appeal, and that, in any event, the prolonged detention of Moya's shoulder bag violated the fourth amendment.

## I

The rule is well established that an appellate court will not review an issue raised for the first time on appeal unless the trial court has committed plain error. *See United States v. Spears*, 671 F.2d 991, 992 (7th Cir.1981); Fed.R.Crim.P. 52(b). In *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), the Supreme Court addressed the issue of waiver where, as here, the government failed to raise an alternative ground for the admission of evidence and the ground on which the lower court admitted the evidence was later rejected. The Court held that the government waived the alternative ground: "The Government ... may lose its right to raise factual issues ... when it made contrary assertions in the courts below, when it has acquiesced in contrary findings by those courts, or when it has failed to raise such questions in a timely fashion during the litigation." *Id.* at 209, 101 S.Ct. at 1646; *cf. United States v. Duckworth*, 699 F.2d 424, 425 (7th Cir. 1983) (raising of issue by government for first time on petition for rehearing deprived defendant of right to fully and fairly litigate the claim). The Court rejected the government's assertion that the alternative ground for admitting the evidence had become viable only after a Supreme Court decision issued posttrial which changed fourth amendment law. The Court found that the government could and should have anticipated the change. *Steagald v. United States, supra*, 451 U.S. at 210 n. 5, 101 S.Ct. at 1647 n. 5; *cf. Reed v. Ross*, — U.S. ——, —— – ——, 104 S.Ct. 2901, 2908–10, 82 L.Ed.2d 1 (1984) (habeas petitioner establishes cause for failure to raise constitutional claim in state court only where "claim is so novel that its legal basis is not reasonably available to counsel").

At least one circuit court used a similar analysis and refused to review a probable cause claim raised by the government on remand from the Supreme Court. *United States v. West*, 723 F.2d 1 (1st Cir.1983). In *West*, the government conceded at trial that there was no probable cause and argued only that the officers had reasonable suspicion to detain the defendant's luggage. The district court found that the detention of the luggage, while awaiting

examination by a narcotics detecting dog was proper; the First Circuit affirmed. *United States v. West*, 651 F.2d 71 (1st Cir.), *vacated and remanded,* — U.S. ——, 103 S.Ct. 3528, 77 L.Ed.2d 1382 (1983). On remand for reconsideration in light of *Place, supra,* the court held: "Given this concession by the government at trial, the issue of probable cause cannot be resurrected on appeal.... Although we might consider the argument were it 'so compelling as virtually to insure the government's success' ... this is scarcely such a case." *United States v. West, supra,* 723 F.2d at 2 n. 1 (citations omitted).

■ In the instant case, the government not only failed to raise the issue of probable cause, but effectively conceded that no probable cause existed. In a motion to suppress the contents of his shoulder bag, Moya argued that the bag was seized without probable cause, thus tainting the later-obtained search warrant and ultimate search of the bag. Defendant's Motion to Suppress at 3, *United States v. Moya, supra,* 561 F.Supp. 1. The government responded that only "reasonable suspicion" was required to justify the detention of Moya's bag. Government's Response to Defendant's Motion to Suppress at 5, *United States v. Moya, supra,* 561 F.Supp. 1. At no time did the government argue that the officers had probable cause to detain the bag, *see id.,* and the government expressly conceded that the seizure of the clear plastic bag was unlawful, *id.* at 4 n. 2, 6. On appeal to this court, Moya again argued that the officers needed probable cause to justify the detention of his shoulder bag. Brief of Defendant/Appellant at 7, 9–20, *United States v. Moya, supra,* 704 F.2d 337. The government again argued only that the officers had reasonable suspicion to detain the bag. Brief for the United States, *United States v. Moya, supra,* 704 F.2d 337. The government acknowledged the Second Circuit's opinion in *United States v. Place, supra,* 660 F.2d 44 (2d Cir.1981), *aff'd,* 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), which held that probable cause is required to detain luggage for a prolonged period of time. The

government responded that *Place* was not the law of this circuit. Brief for the United States, *supra,* at 19 n. 15. The government again conceded the illegality of the seizure of the clear plastic bag. *See id.* at 21 n. 16.

The Supreme Court's decision in *United States v. Place, supra,* 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110, did not work a dramatic change in the law. Litigation of the issue of detaining luggage while waiting the arrival of a trained narcotics detecting dog was of recent vintage when the government presented its arguments in the district court. The circuits split on the issue. *Compare United States v. Klein,* 626 F.2d 22, 26 (7th Cir.1980) (first applying reasonable suspicion standard to detention of luggage) *with United States v. Place, supra,* 660 F.2d at 50–52 (requiring probable cause for a prolonged detention of luggage). The Supreme Court had not yet addressed the issue. When the Court did address the issue in *United States v. Place, supra,* 103 S.Ct. at 2645–46, the Court's holding was based on long-established fourth amendment principles. We conclude that under these circumstances the government should reasonably have anticipated the Court's decision. *Cf. United States v. Johnson,* 457 U.S. 537, 551, 102 S.Ct. 2579, 2588, 73 L.Ed.2d 202 (1982) ("the Court has not ... read a decision to work 'a sharp break in the web of the law,' ... unless that ruling ... explicitly overrules a past precedent of this Court, ... or disapproves a practice this Court arguably has sanctioned in prior cases, ... or overturns a longstanding and widespread practice to which this Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved."); *Steagald v. United States, supra,* 451 U.S. at 210 n. 5, 101 S.Ct. at 1647 n. 5 (government should have raised issue in trial court where subsequent Supreme Court decision "altered Fourth Amendment jurisprudence to some extent, [but] the rationale of that decision was in large part simply an extension of this Court's earlier reasoning").

The district court, of course, was not asked by the government to make a specific finding of probable cause. As a result, there is no "finding" for us to review. The government has not offered any persuasive reason for its failure to raise the issue of probable cause until this late stage in the proceedings. If the existence of probable cause was as apparent as the government now contends, we fail to see why the government failed to raise the issue before the district court. We now hold that the government waived its claims that the officers had probable cause and that the seizure of the clear plastic bag fits within the "plain view" exception to the warrant requirement. *See also United States v. West, supra*, 723 F.2d at 2 n. 1; *cf. United States v. Hoffman*, 607 F.2d 280, 285–86 (9th Cir.1979) (refusing to consider whether "inevitable discovery" doctrine justified warrantless seizure where issue was not raised in the district court).

## II

Even if the government had not waived its probable cause claim, we do not believe that the evidence seized from Moya's shoulder bag was admissible. After examining the merits of the government's claim, we conclude that no probable cause existed prior to the positive reaction to Moya's shoulder bag by the narcotics detecting dog.[1]

## A

 The implications for personal privacy resulting from a finding of probable cause require that the standard be rigorously enforced. Probable cause requires sufficient evidence to lead a reasonable and prudent person to believe, not merely suspect, that a crime has been or is being committed. *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949). We must be especially cautious when the evidence that is alleged to establish probable cause is entirely consistent with innocent behavior. *See Reid v. Georgia*, 448 U.S. 438, 441, 100 S.Ct. 2752, 2754, 65 L.Ed.2d 890 (1980) (per curiam); *United States v. Saperstein, supra*, 723 F.2d at 1229. We find that the evidence available to the officers in this case was insufficient to lead a reasonable person to believe that a crime was being committed.

It is clear that the officers did not have probable cause at the time that they approached Moya in the taxicab line outside the airport. At that time the officers knew that Moya was arriving from Miami, had only carry-on luggage, scanned the crowd repeatedly, looked back over his shoulder, and "sought the privacy of a washroom stall for some reason other than a desire to relieve himself." *United States v. Moya, supra*, 561 F.Supp. at 4. Indeed, this information was insufficient to establish even reasonable grounds for suspecting that Moya was carrying contraband. *Id.; see Reid v. Georgia, supra*, 448 U.S. at 441, 100 S.Ct. at 2754 (reasonable suspicion not established by observations that suspects deplaned from a principal place of origin of cocaine for distribution, arrived in the early morning when law enforcement activity is diminished, carried only shoulder bags, and attempted to conceal that they were traveling together).

After being approached in the taxicab line, four events occurred which the district court found sufficient to give rise to reasonable suspicion. First, when asked for identification Moya responded that he had none. Then, when asked again for identification once inside the terminal, Moya proceeded to produce a driver's license from his shoulder bag. Third, while reaching into the bag, Moya exposed the corner of a clear plastic bag. Finally, when asked to produce the plastic bag, Moya responded that no plastic bag existed. *See United States v. Moya, supra*, 561 F.Supp. at 8. These four events were not sufficient to give rise to probable cause.

---

1. Even if the officers had probable cause to believe Moya's bag contained contraband, there would be a question whether the three hour detention of the bag before seeking a search warrant was reasonable. *See United States v. Saperstein*, 723 F.2d 1221, 1232 (6th Cir.1983).

Probable cause is not established either by failing to present identification upon request by a law enforcement officer, *see Brown v. Texas*, 443 U.S. 47, 52, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357 (1979); *United States v. Brown*, 731 F.2d 1491, 1494 (11th Cir.1984), or by carrying a plastic bag in one's travel luggage, *see infra* at 1050. The only question presented by the instant case is whether Moya's false responses to the officers concerning identification and the plastic bag gave the officers probable cause to believe he was engaged in criminal activity. There are several innocent explanations for a lack of forthrightness with law enforcement officers. A person could simply be mistaken or have forgotten; this explanation appears particularly plausible if one considers the stress that someone might reasonably feel when subjected to police questioning. Alternatively, a person could be attempting to conceal information that is personal or embarrassing but not criminal, or supplying answers that she or he believes will expedite the questioning process.[2] We conclude that Moya's seeming dishonesty with the officers was insufficient to establish probable cause. *See also United States v. Place, supra*, 103 S.Ct. at 2640, 2644 (no probable cause found although the defendant falsely reported to law enforcement officers that his luggage had already been searched by other officers).

**B**

The district court found that the warrantless seizure of the plastic bag containing drug paraphernalia was unconstitutional and excluded the evidence from consideration in determining the reasonableness of the detention of the shoulder bag. *See United States v. Moya, supra*, 561 F.Supp. at 8–9. We agree with the district court (and the government's position at trial) that the search was illegal and the con-

tents must therefore be excluded from our probable cause determination.

The district court correctly concluded that the plain view exception to the warrant clause was inapplicable to the seizure of the plastic bag, *see United States v. Moya, supra*, 561 F.Supp. at 9 n. 6. The plain view doctrine authorizes the warrantless seizure of personal property where the initial intrusion which affords the officers a plain view is lawful, the discovery of the property is inadvertent, and the incriminating nature of the property is "immediately apparent." *Coolidge v. New Hampshire*, 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971) (plurality opinion); *United States v. McDonald*, 723 F.2d 1288, 1295 (7th Cir.1983). The phrase "immediately apparent" does not "imply that an unduly high degree of certainty as to the incriminatory character of evidence is necessary for an application of the 'plain view' doctrine." *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 1542, 75 L.Ed.2d 502 (1983). The character of the property must be such as to give the officers "probable cause to associate the property with criminal activity." *Payton v. New York*, 445 U.S. 573, 587, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980); *see Texas v. Brown, supra*, 103 S.Ct. at 1542.

There is nothing apparently incriminating about a plastic bag. Plastic bags are used by travelers for a variety of innocent purposes. Bags are used, for example, to carry wet items, to contain items that may spill, and to keep items sanitary. The exposure of the corner of the clear plastic bag did not give the officers probable cause to believe that the plastic bag contained contraband. *Contrast Texas v. Brown, supra*, 103 S.Ct. at 1543 (the incriminating nature of a tied-off balloon "common[ly]" used to carry narcotics found sufficiently apparent); *id.* at 1545 (Powell, J., concurring) ("We are not ad-

---

**2.** We do not condone dishonesty with police officers. We note, however, that people are entitled to refuse to provide information to the police. *See* U.S. Const. amend. V; *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980) (plurality opinion)

(rationale for permitting investigative stops is that answers are consensual); *Miranda v. Arizona*, 384 U.S. 436, 458–65, 86 S.Ct. 1602, 1619–23, 16 L.Ed.2d 694 (1966). Nevertheless, many people may have difficulty forthrightly refusing to give police officers requested information.

vised of any innocent item that is commonly carried in uninflated, tied-off balloons such as the one ... seized.").

The district court's conclusion that the plain view exception is inapplicable to the seizure of the contents of Moya's plastic bag is further supported by consideration of the principle underlying the exception. "The principle is grounded on the recognition that when a police officer has observed an object in 'plain view,' " the owner has no remaining privacy interest in the object. *Texas v. Brown, supra*, 103 S.Ct. at 1541. It is clear that Moya retained an expectation of privacy in the contents of his plastic bag even after exposing a corner of the bag.

### III

■ In *United States v. Place, supra,* the Supreme Court found unreasonable the ninety minute seizure of the defendant's luggage based only on the law enforcement officers' reasonable suspicion that the luggage contained contraband. The Court stated, "[W]e have never approved a seizure of the person for the prolonged 90-minute period involved here and cannot do so on the facts presented by this case." 103 S.Ct. at 2646. The Court, however, "decline[d] to adopt any outside time limitation" beyond which all such seizures would be unreasonable, and left the question of the reasonableness of a detention for resolution on a case-by-case basis. *Id.* We find no persuasive grounds for distinguishing the three hour seizure of Moya's shoulder bag from the ninety minute seizure disapproved in *Place.*

The officers who apprehended Moya admitted that they stationed themselves at the airport specifically to investigate the transportation of illicit drugs. Under these circumstances, we believe it is reasonable to expect officers to arrange to have a narcotics detecting dog readily available. *See also United States v. Puglisi,* 723 F.2d 779, 791 (11th Cir.1984) (three hour detention of luggage while awaiting canine sniff-test unreasonable where officer had alternatives of having trained dog at airport or

directing agents in the destination terminal to conduct the search); *cf. United States v. West, supra,* 723 F.2d at 3 (remanding to district court question why agents did not have trained dog in immediate vicinity); *United States v. Sanders,* 719 F.2d 882, 887 (6th Cir.1983) (detention found unreasonable where no explanation why agents did not arrange to conduct investigation at airport). In fact, the record in the instant case indicates that Moya's shoulder bag was eventually tested by a dog from the United States Customs Department located in the airport's international terminal; there is no explanation why it took three hours to transport the luggage from one terminal to another. *See* Transcript of December 1, 1980, at 32–33.

In addition, the Court in *Place* found the unreasonableness of the search exacerbated by the officers' failure to inform the defendant where his luggage was being detained or how long the detention would last, and to make arrangements for the return of the luggage if the sniff-test was negative. 103 S.Ct. at 2646. *See also United States v. Saperstein, supra,* 723 F.2d at 1233 n. 18. The officers acted similarly unreasonably with respect to the seizure of Moya's luggage.

We recognize that in *Place* the New York law enforcement officers were given advance notice by agents in Miami that the defendant, a suspected drug courier, was going to be arriving. The Supreme Court held that the diligence with which law enforcement officers pursue an investigation is one factor, although not the only factor, to be considered in assessing the reasonableness of a detention. The Court concluded that the officers involved in *Place* were less than diligent because they could have, but failed to "arrange for their additional investigation ..., thereby ... minimiz[ing] the intrusion on respondent's Fourth Amendment interests." *United States v. Place, supra,* 103 S.Ct. at 2645–46. Because the officers had alternatives that would have minimized the intrusion on Moya's fourth amendment interests, we are not persuaded by the argument that the

officers had no advance warning that Moya would be arriving at the airport.

The judgment of the district court is vacated and remanded with instructions to suppress all evidence seized from Moya's shoulder bag.

COFFEY, Circuit Judge, dissenting.

In *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983) (*"Place"*), the Supreme Court reaffirmed a basic principle of law that:

"when an officer's observations lead him unreasonably to believe that a traveler is carrying luggage that contains narcotics, the principles of *Terry* [*v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968),] and its progeny ... permit the officer to detain the luggage briefly to investigate the circumstances that aroused his suspicion, provided that the investigative detention is properly limited in scope."

103 S.Ct. at 2644. The facts in *Place* reveal that agents of the Drug Enforcement Administration ("DEA") adhered to this principle of law and detained the defendant's luggage based solely upon a reasonable suspicion that such luggage contained narcotics. The facts further reveal, however, that the agents detained the luggage for ninety minutes before a trained canine performed a "sniff test," detected narcotics, and thereby provided the agents with probable cause to obtain a search warrant. The Supreme Court held that the ninety minute detention of the defendant's luggage, based solely upon a reasonable suspicion and not probable cause that the luggage contained narcotics, constituted an unreasonable seizure in violation of the Fourth Amendment.

In the instant case, Moya's "drug courier profile," his suspicious, nervous actions after deplaning from a non-stop flight originating in Miami, Florida, and his lies concerning identification and the presence of a clear plastic bag in his luggage, provided Officers Labik and Kinsella with reasonable suspicion to believe that Moya's luggage contained narcotics and should thus be detained for further investigation. *Ac-*

cord *United States v. Puglisi*, 723 F.2d 779, 788–89 (11th Cir.1984); *United States v. $84,000 U.S. Currency*, 717 F.2d 1090, 1103–04 (7th Cir.1983) (Swygert J., dissenting); *United States v. MacDonald*, 670 F.2d 910, 914 (10th Cir.), *cert. denied*, 459 U.S. 1015, 103 S.Ct. 373, 74 L.Ed.2d 508 (1982); *United States v. Klein*, 626 F.2d 22, 25 (7th Cir.1980). Indeed, in *United States v. Moya*, 561 F.Supp. 1, 8 (N.D.Ill. 1981) the district court held that Moya's "drug courier profile," his actions at O'Hare International Airport, and his lies concerning identification and the contents of his luggage "gave [Officers] Labik and Kinsella 'reasonable and articulable' grounds for suspecting" that Moya's luggage contained contraband. A majority of this panel affirmed in *United States v. Moya*, 704 F.2d 337, 343 (7th Cir.1983), holding that "the officers had a reasonable suspicion to believe that Moya's travel bag contained contraband even before Moya turned the plastic bag over to them." Clearly, in the instant opinion, the majority does not dispute the established fact that Officers Labik and Kinsella had reasonable suspicion to believe that Moya's luggage contained narcotics and should thus be detained for further investigation.

The majority simply asserts that "no probable cause existed prior to the positive reaction to Moya's shoulder bag by the narcotics detecting dog," some three hours after the initial seizure. Thus, according to the majority, there are "no persuasive grounds for distinguishing the three hour seizure of Moya's shoulder bag from the ninety minute seizure disapproved in *Place*." Contrary to the majority's position, the record reveals that while Agent Labik had reasonable suspicion to believe that Moya's luggage contained narcotics, he also observed, in plain view, a clear plastic bag in the unzipped side pocket of Moya's luggage. The presence of drug paraphernalia in this plastic bag provided Agent Labik, an experienced DEA agent, with probable cause to believe that Moya's luggage contained narcotics. Accordingly, the seizure of Moya's luggage was prem-

ised upon probable cause and the subsequent search of Moya's luggage, pursuant to a valid search warrant, was reasonable and in complete accord with the Fourth Amendment. The majority, as a result of its failure to closely examine the facts of this case, overlooks and casts aside the existence of probable cause, a fact that clearly distinguishes this case from *Place*. I dissent.

The Supreme Court has recognized that each airport encounter involving the seizure of luggage believed to contain narcotics is unique and must be decided upon its particular facts and circumstances. *See Place*, 103 S.Ct. at 2646. *Cf. Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 1329, 75 L.Ed.2d 229 (1983) (airport encounters involving the seizure of person believed to be carrying narcotics also decided upon particular facts and circumstances). The facts in this case, as found by the district court in *United States v. Moya*, 561 F.Supp. at 2–3, reveal that on March 20, 1980, Agent Labik of the DEA and Officer Kinsella of the Chicago Police Department were stationed at O'Hare International Airport to monitor passengers arriving from certain cities considered to be "sources" for the illegal drug traffic in Chicago. At approximately 7:35 p.m., Labik and Kinsella observed the defendant, Cesar Moya, deplaning from Delta Flight 142, a non-stop flight from the "source" city of Miami, Florida. The officers observed Moya, who was carrying a shoulder bag, exit the arrival gate, walk across the concourse, survey the crowd, and proceed toward the main terminal, frequently glancing backwards over his shoulder. Based upon years of experience in detecting drug couriers at O'Hare International Airport, Officers Labik and Kinsella believed that Moya fit the "drug courier profile," and thus followed Moya in close pursuit.[1] Before reaching the main terminal, Moya, followed by Agent Labik, entered a public restroom, found that all of the enclosed stalls were occupied, and exited. Upon reaching the main terminal, Moya, this time followed by Officer Kinsella, entered another public restroom, found an open stall, entered, closed the door, stood there for several minutes, and exited without using the facilities. Moya proceeded to the escalator opposite the Delta Airlines ticket counter and at the moment he made eye contact with Labik and Kinsella, Moya boarded the down-escalator. When he reached ground level, Moya bypassed the baggage claim area, exited the terminal, and entered a cab line while still carrying his shoulder bag.

Labik and Kinsella, who were dressed in plain clothes, approached Moya in the cab line, identified themselves as law enforcement officers, and asked Moya, in a "relaxed" tone of voice, if they could speak with him. Moya agreed without hesitancy, and Officer Kinsella proceeded to ask for identification. Moya denied having any identification, but agreed, again without hesitancy, to move inside the terminal building to avoid the night chill and pedestrian traffic. The officers and Moya entered the terminal and stationed themselves in a public foyer, between the primary and secondary exit doors, where questioning resumed. The officers asked Moya his name and he replied "Cesar Moya." Officer Kinsella next asked to see Moya's airline ticket, Moya agreed, and produced a one-way ticket from Miami, Florida to Chicago, Illinois, on Delta Flight 142, in the name of Cesar Moya. After examining the ticket, Agent Labik asked Moya for further identification. Moya inquired, "What was this all about." Labik ignored Moya's comment, again asked for further identification, and Moya responded by unzipping a side pocket of his shoulder bag, reaching into the pocket, and produc-

---

**1.** The "drug courier profile" consists of characteristics typically associated with couriers of illegal narcotics, as determined by experienced, well-trained DEA agents. The "drug courier profile" is widely used by DEA agents to initiate observation and surveillance of suspected drug couriers at airports throughout the nation. This practice is well-recognized and accepted by Federal courts. *See Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 1322 n. 2, 75 L.Ed.2d 229 (1983); *United States v. Goldstein*, 635 F.2d 356, 360 n. 4 (5th Cir.), *cert. denied*, 452 U.S. 962, 101 S.Ct. 3111, 69 L.Ed.2d 972 (1981).

ing a Florida driver's license in his name and with his picture thereon. When Moya reached into the side pocket of his shoulder bag, Labik observed "a clear plastic bag" in plain view. Labik asked Moya to remove the plastic bag, Moya responded that he had no plastic bag, and Labik replied that if Moya did not remove the plastic bag, he (Labik) would. At that time, Moya reached into the side pocket of his luggage and removed the clear plastic bag which, according to Agent Labik's testimony, contained "12, 14 other clear plastic bags that were rolled up and three small brown bottles that had black lids on them and onto each lid, each cap, was attached a small chain and a small gold spoon." Moya explained that he used the contents of the bag for jewelry, however, Agent Labik recognized the contents of the clear plastic bag as narcotics paraphernalia.

Following discovery of the clear plastic bag and its contents, Labik and Kinsella asked Moya for permission to search his shoulder bag, advising him that he had a right to refuse. Moya refused and freely departed the terminal without the shoulder bag, which Agent Labik detained for purposes of obtaining a search warrant. At approximately 8:15 p.m., Labik contacted the U.S. Customs Office and requested a trained canine to "sniff test" Moya's shoulder bag for narcotics. Some three hours later, at approximately 11:00 p.m., the trained canine arrived on the scene, and from a lineup of six similar pieces of luggage, picked out Moya's shoulder bag. About one-and-a-half hours later, at 12:35 a.m., the officers obtained a valid search warrant from a state court judge in Chicago, opened the shoulder bag, and uncovered 501.77 grams of 35% pure cocaine, valued at between $40,000 and $50,000.

At the outset it is important to note that the majority does not dispute the district court's holding in *United States v. Moya,*

561 F.Supp. at 7 that "no constitutional seizure of Moya's person occurred in this case." Similarly, the majority does not dispute the original holding by a majority of this panel in *United States v. Moya,* 704 F.2d at 342, that "[b]ased on the factors outlined by this court in [*United States v. Black,* 675 F.2d 129 (7th Cir.1982), *cert. denied,* 460 U.S. 1068, 103 S.Ct. 1520, 75 L.Ed.2d 945 (1983) ], we affirm the district court's conclusion that no seizure occurred during the 'personal intercourse' between Moya and the law enforcement officers and a 'reasonable person' would have believed he was free to go." Indeed, Officers Labik and Kinsella displayed no use of force or physical authority to detain Moya and the record contains no evidence suggesting that Moya was naive or vulnerable to coercion. Further, the encounter occurred in a public area, Moya freely agreed to answer questions and move from the cab line to the public foyer without hesitancy, and Moya was free, at all times, to walk away from the officers, which he eventually did when Officer Labik detained his shoulder bag. Accordingly, Moya's person was not seized, *see, Florida v. Royer,* 103 S.Ct. at 1324; *United States v. Mendenhall,* 446 U.S. 544, 553–55, 100 S.Ct. 1870, 1876–77, 64 L.Ed.2d 497 (1980) (opinion of Stewart, J.); *United States v. Notorianni,* 729 F.2d 520, 522 (7th Cir.1984); *United States v. Black,* 675 F.2d at 134–36, and the sole issue before this panel is whether, in light of *Place,* the detainment of Moya's luggage was an unreasonable seizure in violation of the Fourth Amendment.[2]

In resolving the issue before this panel, I initially address the majority's erroneous assertion that because the Government failed to present its probable cause argument to the district court, the issue of probable cause is not properly before this court for review. The majority relies upon *United States v. West,* 723 F.2d 1 (1st

---

**2.** The Supreme Court's analysis in *Reid v. Georgia,* 448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980) (per curiam) and *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), concerned the *seizure of a person* believed to be carrying narcotics, not the *seizure*

*of luggage* believed to contain narcotics. In the instant case, it is clear that Moya's person was not seized and thus, the Supreme Court's analysis in *Reid* and *Mendenhall* is inapplicable to the issue before this panel.

Cir.1983) (*"West"*), a case factually similar to the present one, to support its unique and truly novel theory of waiver. In *West*, DEA agents detained the defendant's luggage based upon a reasonable suspicion that such luggage contained narcotics. Approximately one hour after the initial seizure, a trained canine arrived, performed a positive "sniff test," and thereby provided the agents with probable cause to obtain a search warrant. In the ensuing search the agents uncovered a quantity of cocaine. The district court denied the defendant's motion to suppress the cocaine, reasoning that the DEA agents had reasonable suspicion to seize the luggage. *See United States v. West*, 495 F.Supp. 871, 874–76 (D.Mass.1980). The defendant was thereafter convicted for possession with intent to distribute a controlled substance, and the conviction was upheld on appeal by the First Circuit. *See United States v. West*, 651 F.2d 71 (1st Cir.1981). The Supreme Court remanded the case, *see West v. United States*, —— U.S. ——, 103 S.Ct. 3528, 77 L.Ed.2d 1382 (1983), to determine, in light of *Place*, "whether the detention of West's suitcase ... was so intrusive as to exceed the officer's limited authority." *West*, 723 F.2d at 2. On remand, the Government argued that the DEA agents "actually had probable cause to search West." *Id.* at 2 n. 1. The First Circuit rejected this argument on the basis that the Government had already *conceded* in the district court that " 'up to the time [the defendants'] bag was sniffed by the specially trained dog, no probable cause existed to believe that the bag contained drugs or any other contraband.' " *Id.* (quoting *United States v. West*, 495 F.SUpp. at 874). The First Circuit concluded that "the issue of probable cause cannot be resurrected on appeal." *West*, 723 F.2d at 2 n. 1.[3]

The majority's reliance upon *West* as support for its waiver argument is blatant error. In direct contradiction to the Government's position in *West*, the Government in the instant case has never conceded that it lacked probable cause to seize Moya's luggage. Instead, the Government simply argued to the district court that in light of Moya's "drug courier profile," his suspicious, nervous actions after deplaning from a non-stop flight originating in the "source" city of Miami, Florida, and his lies concerning identification and the presence of a clear plastic bag in his luggage, Agent Labik and Officer Kinsella had reasonable suspicion to believe that Moya's luggage contained narcotics and should thus be detained for further investigation. It is clear that at the time of the Government's argument to the district court in December of 1980 and January-February of 1981, the law in this circuit was well-settled that reasonable suspicion was a proper basis upon which to detain luggage believed to contain narcotics. *See United States v. Klein*, 626 F.2d 22, 26 (7th Cir.1980) (*"Klein"*). Indeed, the district court relied upon *Klein* in ruling that the officers were permitted to detain Moya's luggage based upon reasonable suspicion, *United States v. Moya*, 561 F.Supp. at 8–11, and a majority of this panel affirmed that ruling on appeal, *United States v. Moya*, 704 F.2d at 342–43. Moreover, in *Place* the Supreme Court reaffirmed the basic principle of law set forth in *Klein* that an officer may detain luggage based upon a reasonable suspicion that such luggage contains narcotics. *Place*, 103 S.Ct. at 2644. Accordingly, the Government, *without conceding* nor having to address the issue of probable cause, was fully justified in originally relying upon the reasonable suspicion standard to uphold the seizure of Moya's luggage.

---

**3.** In *West*, the First Circuit remanded the case to the district court to conduct an evidentiary hearing on the time delay between the original detainment of the defendant's luggage and the canine "sniff test." 723 F.2d at 3. The district court found that West's luggage was detained between forty-five and sixty minutes before the canine "sniff test" was performed. The First Circuit held that because much of the forty-five to sixty minute time delay occurred after West had departed without his luggage and because the "sniff test" could have been performed within twenty minutes of the initial seizure, had West elected to remain with the luggage, the seizure was reasonable under the standards established in *Place*. *United States v. West*, 731 F.2d 90, 93–94 (1st Cir.1984).

In an attempt to neatly package the Government's legal argument in this case to resemble that in *West,* the majority erroneously asserts that the Government *effectively conceded* the probable cause issue by "expressly conced[ing] that the seizure of the clear plastic bag was unlawful." The majority's mischaracterization of the Government's position before the district court is clearly inaccurate and without support in the record. The Government's only concession before the district court was that Agent Labik's command directing Moya to remove the clear plastic bag from his luggage, "vitiates any claim that Moya consented to showing the agents the plastic bag." Government's Response to Defendant's Motion to Suppress at 4 n. 2. The Government continued to maintain, however, that "even without the contents of the plastic bag, the agents had 'reasonable suspicion' to detain the travel bag...." *Id.* Contrary to the majority's position, at no time did the Government concede an unlawful seizure of the clear plastic bag nor effectively concede the probable cause issue. Quite simply, the Government never had to reach or address the issues of the plastic bag seizure or the existence of probable cause. Instead, under the law of this circuit as set forth in *Klein,* the Government properly argued that Agent Labik and Officer Kinsella lawfully detained Moya's luggage based upon a reasonable suspicion that such luggage contained narcotics.

I further note that at the time the Government presented its case to the district court in December of 1980 and January-February of 1981, the Supreme Court had not ruled on the permissible length of a luggage detention based solely upon reasonable suspicion. Moreover, contrary to the majority's assertion that the "circuits split on the issue," at the time of the

Government's argument before the district court, no Federal circuit court had limited the length of a luggage detention based solely upon reasonable suspicion. *See, e.g., United States v. West,* 651 F.2d at 74; *United States v. Viegas,* 639 F.2d 42, 45 (1st Cir.), *cert. denied,* 451 U.S. 970, 101 S.Ct. 2046, 68 L.Ed.2d 348 (1981); *Klein,* 626 F.2d at 26. *Accord United States v. Regan,* 687 F.2d 531, 537 (1st Cir.1982) ("Neither *West* nor *Viegas* ... considered the problem of when the period of detention might be so lengthy as to become ... unreasonable in the absence of probable cause."). Instead, the Federal circuit courts simply cited to and relied upon the Supreme Court's reasoning in *United States v. Van Leeuwen,* 397 U.S. 249, 252–53, 90 S.Ct. 1029, 1032, 25 L.Ed.2d 282 (1970), that the 29-hour detention of first class mail, on the basis that such mail was "suspicious," did not constitute an unreasonable seizure in violation of the Fourth Amendment. The Second Circuit, in *United States v. Place,* 660 F.2d 44 (2d Cir. 1981), was the first Federal circuit to suggest that probable cause was necessary for a prolonged detention, and that case was not decided until September of 1981, some seven months after the Government's argument before the district court.[4] Accordingly, the Supreme Court's holding in *Place,* that a ninety minute detention of luggage without probable cause constitutes an unreasonable seizure, modified the law as it existed and was interpreted by the Federal appellate courts in January-February of 1981.

The general rule, of course, is that "a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976). However, "[t]he matter of what questions may be

---

**4.** I note that following the Second Circuit's opinion in *United States v. Place,* but preceding the Supreme Court's opinion in the same case, the Federal circuit courts remained split on the length of time that luggage could be detained based solely upon reasonable suspicion. *See, e.g., United States v. Belcher,* 685 F.2d 289, 290–91 (9th Cir.1982) (probable cause required for

detention of luggage); *United States v. Corbitt,* 675 F.2d 626, 629 (4th Cir.1982) (detention for a "limited time"); *United States v. Martell,* 654 F.2d 1356, 1359–61 (9th Cir.1981), *cert. denied,* — U.S. ——, 103 S.Ct. 3551, 77 L.Ed.2d 1397 (1983) (length of detention is a relevant factor, but no outer time limit).

taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeal, to be exercised on the facts of individual cases." *Id.* at 121, 96 S.Ct. at 2877. In the instant case, the Government had no reason to argue the issue of probable cause before the district court, given this circuit's ruling in *Klein* that reasonable suspicion of narcotics is sufficient to detain a traveler's luggage. Moreover, the Government had no reason to address the probable cause issue as an alternative argument because at the time the Government presented this case to the district court, no Federal appellate court had limited the length of a luggage detention based solely upon reasonable suspicion. Finally, in complete contrast to the legal argument in *West*, at no time did the Government concede that the clear plastic bag was illegally seized from Moya's luggage nor effectively concede that Agent Labik and Officer Kinsella lacked probable cause to seize Moya's luggage. Contrary to the facts in *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), where the Government "made contrary assertions in the courts below ... [and] acquiesced in contrary findings by those courts," 451 U.S. at 209, 101 S.Ct. at 1646, the Government in this case has not lost its right to raise the probable cause issue through "assertions, concessions, and acquiescence," 451 U.S. at 211, 101 S.Ct. at 1647. In light of the fact that the Government, without conceding nor having to address the probable cause issue, was fully justified in relying upon the reasonable suspicion standard to uphold the seizure of Moya's luggage, I am firmly convinced that the Government did not waive the issue of probable cause and that this "appellate court is justified in resolving an issue not passed on below." *Singleton v. Wulff*, 428 U.S. at 121, 96 S.Ct. at 2877.

Turning to the issue of probable cause, I initially note that following Moya's refusal to consent to a search of his shoulder bag, Officers Labik and Kinsella detained the shoulder bag and thereby seized Moya's luggage. *See Place*, 103 S.Ct. at 2645. The question becomes whether the officers had probable cause or simply reasonable suspicion to believe that Moya's luggage contained narcotics at the time of this seizure. Clearly, if the officers had probable cause to believe that the luggage contained narcotics, the seizure and subsequent search of that luggage, pursuant to a valid search warrant, was reasonable and in accord with the Fourth Amendment. *See United States v. Jodoin*, 672 F.2d 232, 233–36 (1st Cir.1982) (overnight detention of luggage permissible based upon probable cause). To resolve the question presented in this case, I am called upon to thoroughly review the facts for my brethren on the panel.

The district court found that Agent Labik and Officer Kinsella initially observed Moya as he deplaned from Delta Flight 142, a non-stop flight from Miami, Florida. The officers were aware that Miami was a "source city" for the illegal drug traffic in Chicago. After viewing Moya walk across the concourse and suspiciously survey the crowd, the well-trained, experienced officers determined that Moya fit the "drug courier profile." The officers followed Moya down the concourse as he frequently glanced backwards over his shoulder. On two separate occasions, the officers followed Moya into public restrooms, once waiting as Moya entered a stall, closed the door, stood there for several minutes, and exited without using the facilities. At the moment that Moya made eye contact with the officers, he proceeded down the escalator and into a cab line, claiming no luggage and carrying only his shoulder bag. Moya freely agreed to speak with the officers, and when asked for identification, Moya falsely responded that he had none, though he later produced a driver's license in the name of Cesar Moya and with his picture thereon. Further, when asked to remove a clear plastic bag from the side pocket of his luggage, Moya falsely responded that he had no plastic bag, despite the fact that Agent Labik had observed the bag in plain view.

Based upon the facts that Agent Labik and Officer Kinsella had before them, in-

cluding Moya's "drug courier profile," his nervous, suspicious actions in the airport terminal building, and his lies concerning identification and the contents of his luggage, the officers certainly had grounds to reasonably suspect that Moya's luggage contained narcotics. *See United States v. Puglisi,* 723 F.2d at 788–89; *United States v. $84,000 in U.S. Currency,* 717 F.2d at 1103–04 (Swygert, J., dissenting); *United States v. MacDonald,* 670 F.2d at 914; *Klein,* 626 F.2d at 25. Added to this reasonable suspicion of narcotics was Agent Labik's observation, *in plain view,* of the clear plastic bag that Moya had emphatically denied being present in the unzipped side pocket of his luggage. According to the Supreme Court in *Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (*"Brown"*):

> " 'plain view' provides grounds for seizure of an item when an officer's access to an object has some prior justification under the Fourth Amendment. 'Plain view' is perhaps better understood, therefore, not as an independent 'exception' to the warrant clause, but simply as an extension of whatever the prior justification for an officer's 'access to an object' may be."

103 S.Ct. at 1540–41 (footnote omitted). In this circuit it is well-settled that the "plain view" doctrine allows for the warrantless seizure of evidence if:

> "(1) the initial intrusion which afforded the authorities the plain view was lawful;
>
> (2) the discovery of the evidence was inadvertent; and
>
> (3) the incriminating nature of the evidence was immediately apparent."

*United States v. McDonald,* 723 F.2d 1288, 1295 (7th Cir.1983) (*"McDonald"*) (citing *United States v. Schire,* 586 F.2d 15, 17 (7th Cir.1978)). *See also Coolidge v. New Hampshire,* 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971); *United States v. Reed,* 726 F.2d 339, 343 (7th Cir. 1984). Moreover, in *Brown* the Supreme Court clarified that it does "not view the 'immediately apparent' language ... as establishing any requirement that a police officer 'know' that certain items are contraband or evidence of a crime." 103 S.Ct. at 1542. Instead, the Court determined that *"probable cause* to associate the property with criminal activity" is sufficient to satisfy the third prong of the "plain view" test. *Id.* (emphasis added) (quoting *Payton v. New York,* 445 U.S. 573, 587, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980)). *See also McDonald,* 723 F.2d at 1295. According to the Court in *Brown:*

> "probable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief,' *Carroll v. United States,* 267 U.S. 132, 162 [45 S.Ct. 280, 288, 69 L.Ed. 543] (1925), that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A 'practical, nontechnical' probability that incriminating evidence is involved is all that is required. *Brinegar v. United States,* 338 U.S. 160, 176 [69 S.Ct. 1302, 1311, 93 L.Ed. 1879] (1949)."

103 S.Ct. at 1543. *See also McDonald,* 723 F.2d at 1295.

The facts in the instant case are clearly sufficient to satisfy all three prongs of the "plain view" test, as that test has been interpreted by the Supreme Court in *Brown* and this court in *McDonald.* Moya freely agreed to speak with Officers Labik and Kinsella in a public foyer, and during the course of this conversation the experienced, well-trained officers developed a reasonable suspicion to believe that Moya's luggage contained narcotics. Thus, the initial intrusion affording Agent Labik access to observe Moya's luggage, and the clear plastic bag in plain view, was lawful and justified under the Fourth Amendment. Furthermore, Agent Labik's discovery of the clear plastic bag was completely inadvertent, as he did not view the bag until Moya, on his own initiative, unzipped the side pocket of his luggage. Finally, even though a clear plastic bag may be used for a multitude of noncriminal purposes, it is common knowledge that such a bag is frequently used to keep and store illegal nar-

cotics. In light of the facts available to Agent Labik, including Moya's "drug courier profile," his suspicious, nervous actions at O'Hare International Airport, his lie concerning identification, and his emphatic denial of the plastic bag in his luggage, there certainly was a "practical, nontechnical" probability that the clear plastic bag contained illegal narcotics. In accord with the flexible, common-sense standard set forth by the court in *Brown*, Agent Labik had probable cause to associate the clear plastic bag with criminal activity. *See Brown*, 103 S.Ct. at 1543 (opaque balloon frequently used to carry narcotics properly seized under plain view doctrine.) *Cf. United States v. Blake*, 484 F.2d 50, 57 (8th Cir.1973), *cert. denied*, 417 U.S. 949, 94 S.Ct. 3076, 41 L.Ed.2d 669 (1974) (probable cause based, in part, upon "the white plastic bag, a common item in narcotics distribution, ... protruding 1½ inches outside the closed purse."). Accordingly, Agent Labik properly seized the clear plastic bag that he observed in plain view.

The majority adopts the reasoning of the district court and erroneously claims that "the plain view exception to the warrant clause was inapplicable to the seizure of the plastic bag." In response, I note that the district court misapplied the law when it ruled that the plain view doctrine did "not justify ... a seizure of the [clear plastic bag containing] drug paraphernalia." *United States v. Moya*, 561 F.Supp. at 9 n. 6. The district court premised its conclusion upon the language of *Coolidge v. New Hampshire*, 403 U.S. at 468, 91 S.Ct. at 2039, that "plain view alone is never enough to justify a warrantless seizure." *United States v. Moya*, 561 F.Supp. at 9 n. 6. In *Brown*, the Supreme Court interpreted this phrase used by the Court in *Coolidge v. New Hampshire*, and relied upon by the district court, to mean that "in order for the plain view doctrine to apply, a police officer must be engaged in a lawful intrusion or must otherwise legitimately occupy the position affording him a 'plain view.' " 103 S.Ct. at 1540 n. 3. The facts in the instant case clearly establish that Moya agreed to speak with officers Labik and Kinsella in a public foyer, and during the course of this conversation, the officers developed a reasonable suspicion to believe that Moya's luggage contained narcotics. Thus, Agent Labik legitimately occupied the position affording him a plain view of the clear plastic bag and, contrary to the district court's position, as adopted by the majority, the plain view doctrine is applicable.

The relevant case law establishes that probable cause is a flexible, practical, common-sense standard that requires facts sufficient " 'to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Brinegar v. United States*, 338 U.S. at 175–76, 69 S.Ct. at 1310–11, (quoting *Carroll v. United States*, 267 U.S. at 162, 45 S.Ct. at 288). *See also Texas v. Brown*, 103 S.Ct. at 1543; *Dunaway v. New York*, 442 U.S. 200, 208 n. 9, 99 S.Ct. 2248, 2254 n. 9, 60 L.Ed.2d 824 (1979); *United States v. Garza-Hernandez*, 623 F.2d 496, 499 (7th Cir.1980). Indeed, in this circuit "[t]he determination of whether probable cause exists in a given situation involves 'the factual, practical considerations of everyday life upon which reasonable, prudent [persons], not legal technicians act.' " *United States v. Covelli*, 738 F.2d 847, 853 (7th Cir.1984) (quoting *United States v. Watson*, 587 F.2d 365, 368 (7th Cir.1978), *cert. denied*, 439 U.S. 1132, 99 S.Ct. 1055, 59 L.Ed.2d 95 (1979)). The record in this case reveals that Agent Labik had sufficient facts, information, and knowledge, including Moya's "drug courier profile," his suspicious, nervous actions in O'Hare International Airport, his lie concerning identification, his emphatic denial of a clear plastic bag within his luggage, and the presence of drug paraphernalia in that clear plastic bag, "to warrant a man of reasonable caution in the belief" that a narcotics crime was taking place. In light of Agent Labik's observations, probable cause clearly existed to believe that Moya's luggage contained narcotics. *See United States v. Large*, 729 F.2d 636, 639–40 (8th Cir.1984) (probable cause to seize luggage based on corroborated information of confidential informant, defendant's pattern of behavior in airport, and defendant's nervousness during investigatory stop); *United*

*States v. Jodoin,* 672 F.2d at 235 ("direct lies and peculiar statements ... together with nervous behavior, a brief 17-hour Florida stay, cash ticket payments, midnight plane rides, no phone number and other behavior which fit the ... drug courier profile ... warrant the finding of probable cause...."). Thus, Agent Labik properly seized Moya's luggage, obtained a search warrant, and uncovered 501.77 grams of 35% pure cocaine, valued at between $40,-000 and $50,000.

The fact that a trained canine performed a "sniff test" and detected narcotics in Moya's luggage before a search warrant was obtained did not affect the legality of the search. According to the Supreme Court in *Place,* a canine "sniff test" of this nature does "not constitute a 'search' within the meaning of the Fourth Amendment." 103 S.Ct. at 2645. *See also United States v. Goldstein,* 635 F.2d 356, 360 (5th Cir. 1981), *cert. denied,* 452 U.S. 962, 101 S.Ct. 3111, 69 L.Ed.2d 972 (1981) and cases cited therein. The positive "sniff test" simply served to substantiate the already present probable cause that was necessary to obtain a search warrant in the first instance.

In *United States v. Mendenhall,* Justice Powell realized that:

"[t]he public has a compelling interest in detecting those who would traffic in ... drugs for personal profit. Few problems affecting the health and welfare of our population, particularly our young, cause greater concern than the escalating use of controlled substances. Much of the drug traffic is highly organized and conducted by sophisticated criminal syndicates. The profits are enormous. And many drugs, including [cocaine] may be easily concealed. As a result, the obstacles to detection of illegal conduct may be unmatched in any other area of law enforcement."

446 U.S. at 561–62, 100 S.Ct. at 1881 (opinion of Powell, J.). In the instant case, Agent Labik and Officer Kinsella performed their drug enforcement duties in an exceptionally skilled and legal manner. The record reveals that at the time that Agent Labik seized Moya's luggage, he had probable cause to believe that such lug-

gage contained narcotics. Before conducting a search of the luggage, Labik properly sought the "detached scrutiny of a neutral magistrate, which is a more reliable safeguard against improper searches than the hurried judgment of a law enforcement officer 'engaged in the often competitive enterprise of ferreting out crime.'" *United States v. Chadwick,* 433 U.S. 1, 9, 97 S.Ct. 2476, 2482, 53 L.Ed.2d 538 (1977) (quoting *Johnson v. United States,* 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948)). As soon as the state court judge issued a valid search warrant, Labik opened Moya's shoulder bag and uncovered 501.77 grams of 35% pure cocaine. Based upon a thorough review of the facts and circumstances surrounding the seizure of Moya's luggage, I conclude that Agent Labik had probable cause to seize such luggage. Accordingly, the seizure of Moya's luggage and the subsequent search thereof, pursuant to a valid search warrant, were reasonable and in accord with the Fourth Amendment. I dissent from the majority's inability to distinguish the unique facts of this case from those of *Place.*