UNITED STATES of America,
Plaintiff-Appellee,

v.

Marc NOTORIANNI,
Defendant-Appellant.

No. 83–1948.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 10, 1984.

Decided March 12, 1984.

Barry A. Spevack, Michael D. Monico, Chicago, Ill., for defendant-appellant.

Antonio J. Curiel, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before PELL, CUDAHY and POSNER, Circuit Judges.

POSNER, Circuit Judge.

■ The defendant, Marc Notorianni, appeals from his conviction (after a bench trial) for possession, with intent to distribute, cocaine. 21 U.S.C. § 841(a)(1). He was sentenced to a year in prison, to be followed by a special parole term, and fined $5,000. The only issue on appeal is whether the search of his luggage at O'Hare Airport in Chicago violated the Fourth Amendment. Since the district judge believed the version of the events at O'Hare given by the officers who conducted the search, and Notorianni does not argue that their version is incredible, we are bound to accept it as true for purposes of this appeal.

Two experienced plainclothes officers of the Drug Enforcement Administration, Labik and Streicher, watched passengers dis-

embarking at O'Hare from a flight from Fort Lauderdale, Florida, a source city for narcotics. Notorianni (a 25-year-old unemployed carpenter with a ninth-grade education) was one of the disembarking passengers. He caught Labik's attention by walking slowly up the concourse and looking back toward the gate. Accompanied by his girlfriend, Marsh, Notorianni talked briefly with the Donovans, who had arrived at O'Hare on the same flight. The couples walked to the baggage area separately—the Donovans followed by Streicher, Notorianni and Marsh by Labik. The officers were struck by the fact that when the two couples were standing at the baggage carousel waiting for their luggage they did not look at or speak to each other. After the Donovans claimed their luggage Streicher walked up to them, identified himself as a federal agent, and began talking to them. Labik saw Notorianni look in Donovan's direction, claim his last piece of luggage, and then (with Marsh) walk toward the exit. Labik stepped alongside them and without touching them or drawing his gun said in conversational tones that he was a federal agent, showed them his badge, and asked whether he could ask them some questions. Notorianni said yes, and the three moved to the side of the concourse to be out of the stream of traffic. Labik asked Notorianni for identification, and Notorianni gave him his airplane ticket. Labik asked to see his baggage claim stubs. Notorianni said that Donovan had them, and pointed in Donovan's direction. At this point Streicher and the Donovans appeared, and Labik asked Donovan whether he had Notorianni's baggage claim stubs, and Donovan said he did. Labik then stated that he was conducting a narcotics investigation, asked Notorianni whether he could search his luggage, and told him he had a right to refuse. Notorianni agreed to the search and began to open one of the suitcases, but before it was fully open Labik interrupted and said he would finish opening it. He did, and searched the suitcase, but found nothing. In the next suitcase, however, he found a bag of cocaine having a street value of

about $10,000, and he then arrested Notorianni. Labik asked Miss Marsh and Mrs. Donovan whether he could search their bags, and they agreed, and he found narcotics in Mrs. Donovan's, and arrested her—and later her husband as well, when he tried to bribe the officers to let her go.

The government concedes that the officers' inspired hunch did not amount to probable cause to arrest Notorianni, that it was not till they found the cocaine in the second suitcase that they had probable cause to arrest him or even that lesser degree of suspicion that will justify the sort of brief detention (*"Terry* stop," after *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)) that, because it is a lesser restriction on freedom of movement than an arrest, is allowed on a lesser showing of cause. Notorianni, on his part, does not argue that his consent to the search of his luggage was coerced or involuntary, but that the search was invalid as the fruit of ("induced by," in his words) a detention that was unlawful because not supported by the required degree of suspicion. Thus the only issue he presents for review is "Whether the defendant was improperly detained when government agents arbitrarily and capriciously detained him and induced him to submit to a search." And he concedes that his conviction must be affirmed if he "was not seized within the meaning of the Fourth Amendment when agent Labik intercepted him and then induced him to consent to a search of his luggage." He does complain that when, having consented to a search of his luggage, he began to open the suitcase Labik interrupted him and told him that he, Labik, would conduct the search. But there is no evidence that Notorianni complained at the time. Having consented without conditions, he could not attach conditions later.

So we do not think the voluntariness of Notorianni's consent to the search of his luggage is an issue in this appeal. The only issue is whether Notorianni was detained when he gave his consent to the search. If he was, there was an unconsti-

tutional seizure of his person, the consent he gave was vitiated, and the fruits of the search should have been suppressed. If he was not detained, his consent was effective, the search and the seizure of the cocaine were lawful, and his conviction must be affirmed. See *United States v. Cordell*, 723 F.2d 1283, 1284–85 (7th Cir. 1983).

■ The applicable legal standard is no longer in doubt in this circuit. In *United States v. Black*, 675 F.2d 129, 134–35 (7th Cir.1982), a panel of this court, in an airport-surveillance case much like the present one, held that the practice of DEA agents in accosting and attempting to question suspected narcotics violators was not coercive per se and the accosted individual would not be deemed to have been seized within the meaning of the Fourth Amendment unless a reasonable person in his position would have believed that he was not free to ignore the agents and continue on his way. A year later, in a considered dictum joined in by eight members of the Supreme Court, Justice White wrote, in apparent confirmation of the holding in *Black*, that "law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street *or in another public place*, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification." *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983) (citations omitted). Fortified by this language, three recent decisions of this court have reaffirmed the holding in *Black*. See *United States v. Morgan*, 725 F.2d 56, 58–59 (7th Cir.1984); *United States v. Cordell, supra*, 723 F.2d at 1285; *United States v. $73,277*, 710 F.2d 283, 288 (7th Cir.1983). And in one, the judge who had dissented in *Black* concurred. See *United States v. Cordell,*

*supra*, 723 F.2d at 1286 (concurring opinion).

It might appear that a test based on the perceived freedom of movement of the accosted individual would invite all sorts of tricky psychological inquiries. But this road to legal indeterminacy has been closed off by our holding in *Black* that the test is an objective one—the relevant perception that of the reasonable man rather than that of the actual defendant—an approach borrowed from Justice Stewart's plurality opinion in *United States v. Mendenhall*, 446 U.S. 544, 555, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980), which was cited approvingly in *Royer*, see 103 S.Ct. at 1324. Although *Royer* does not cite the page in *Mendenhall* where Justice Stewart states the "reasonable man" test in its most explicit form, there can be no doubt that *Royer* like *Black* contemplates an objective rather than subjective test. The Court said that the acts of accosting and putting questions to an individual, even by one who identifies himself as a law-enforcement officer, do not raise an encounter to the level of a Fourth Amendment seizure, whether or not the particular individual believed himself free not to cooperate.

■ So the question here is not whether Notorianni in fact believed himself free not to answer Agent Labik's questions but whether a reasonable, which is to say the average, person in Notorianni's position would have felt free to decline to answer. And we think the answer has to be yes. We know from *Royer* and *Black* and a host of other airport-surveillance cases that merely accosting a person in an airport, identifying yourself as a federal agent, and asking the person whether he is willing to answer questions do not create a setting in which the average person does not feel free to thumb his nose at the agent. (Maybe this is a wrong guess about what the average person feels in this situation but it is the law of this circuit.) An additional factor in this case is that the agent told Notorianni that he was conducting a narcotics investigation. But we cannot think that this made the circumstances coercive. On

the contrary, if a federal agent starts asking one questions, and asks to search one's luggage, without giving any statement of purpose, one is apt to be more alarmed—and will certainly have less forewarning of danger—than if the agent explains what he is looking for. Joseph K. (in Kafka's novel, The Trial) was never told the reason why he was being investigated. Nor does it make a difference that there were two agents and that a total of four people (not counting the Donovans' infant) were accosted. If anything, it seems to us, a person who is by himself is more likely to be intimidated by police officers than one who is accompanied by family and friends. Finally, while Labik did not tell Notorianni that he was free to leave, this was implicit in the fact that Labik asked Notorianni whether he would answer some questions—the interrogatory mode implying that the choice to cooperate was Notorianni's.

Although none of the facts of this case seem to take it out of the orbit of our previous decisions, we are troubled that the district judge, while refusing to suppress the fruits of the search, did not make a specific finding that a reasonable person in Notorianni's position would have felt free to ignore Labik when Labik asked to question him. Maybe an implicit finding to this effect can be inferred from the judge's statement that "the second question to be resolved is ... Were they [Notorianni and Miss Marsh] free to go—come and go?," followed shortly by, "I think the reviewing courts have implicitly viewed that particular conduct as not a seizure based upon the facts of the cases that have been decided." But, in any event, we know the judge believed the officers' version of what happened; and under the objective test that is the law in this circuit that version established as a matter of law that Notorianni was not seized.

AFFIRMED.

CUDAHY, Circuit Judge, dissenting:

I share the majority's doubts whether the district court here made the key finding that Notorianni was "free to go." Instead, Judge Aspen punctuated his reference to this subject with a question mark. The majority is ready to overlook this deficiency and to conclude as a matter of law, based on the officers' version of the encounter, that Notorianni was free to leave. I think this approach is an unacceptable departure from the line of airport search and seizure cases in which we have emphasized reliance on the ultimate factual finding by the district court and in which we have reviewed this finding under the clearly erroneous standard. *See, e.g., United States v. Black,* 675 F.2d 129, 135 (7th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1520, 75 L.Ed.2d 945 (1983).

It is perfectly appropriate to indulge what may be a modest fiction that a person being casually questioned by a policeman about possible criminal activity feels entirely free to say nothing and move on. Such a psychological assumption does no violence to the fourth amendment and makes it possible for police to cope with drug traffic in a place like O'Hare Airport. But I would require almost without exception, an unequivocal determination by the finder of fact of the key and crucial ultimate fact—whether a reasonable person, under all the numerous facts and circumstances of the case, would have felt free to leave. For example, what is the significance of Labik's failure to advise the defendant that he was not required to answer questions? The requirement of unequivocal factual findings is in my view hardly excessive in light of the almost unlimited combinations of factual circumstances which surround a procedure obviously open to subtle and not so subtle abuse.[1]

The facts of this case may be, as the majority phrases it, within the "orbit" of

---

1. We have recognized from the start that the proper application of the *Black* test (from *United States v. Black,* 675 F.2d 129, 134 (7th Cir. 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1520, 75 L.Ed.2d 945 (1983)) requires "highly factual" analysis that we, as an appellate tribunal, are ill-equipped to perform. *See also United States v. Berry,* 670 F.2d 583, 596–98 (5th Cir.1982) (en banc) (requiring "close scrutin[y]" of coercion in airport questioning).

our prior decisions. We have upheld findings that a reasonable person would feel free to leave, (against "clearly erroneous" challenge) in circumstances similar to the present case. However, nothing in any of those cases suggests that if the district court had concluded otherwise, we would not also have deferred to that finding. If the district court here had found that a reasonable person in Notorianni's shoes would not have felt free to leave, such a finding may or may not have been clearly erroneous. The majority's willingness to find, *as a matter of law,* that a reasonable person in Notorianni's circumstances would have felt free to leave is a substantial, and unsupported, intrusion into the district court's fact finding function.

I would therefore remand for further findings of fact by the district court.