that the Lease-Purchase Agreement was executory.

The Sloans contend that the Lease-Purchase Agreement constituted an executory contract subject to the provisions of 11 U.S.C. § 110 because both Becknell and the Sloans were obligated to perform certain acts in the future. In support of that contention the Sloans identified a whole range of specific obligations that were to be performed by Becknell including a promise to pay the balance.

The Trustee contends that the Lease-Purchase Agreement was not executory for five reasons. First, the appellants had fully performed their obligations. Second, the only obligation that is not fully performed is Becknell's obligation to pay the balance. Third, that unperformed obligation to pay the balance does not create an executory contract that must be accepted or rejected. Fourth, the appellants' future obligations as listed by the Sloans are "actually rights consistent with their continued ownership of the surface and rights to monitor the method of accounting for amounts of coal removed which relate to payment for the coal." Fifth, the Lease-Purchase Agreement was subject to an employees' lien under Ky.Rev.Stat. § 376.150.

We believe that the contract is executory. This Court has stated that:

> The key, it seems, to deciphering the meaning of the executory contract rejection provisions, is to work backward, proceeding from an examination of the purposes rejection is expected to accomplish. If those objectives have already been accomplished, or if they can't be accomplished through rejection, then the contract is not executory within the meaning of the Bankruptcy Act.
>
> . . . .
>
> *Thus, executory contracts involve obligations which continue into the future.* S.Rep. No. 94–458, 94th Congress, 1st Sess. (1975). *They include leases, employment contracts and agreements to buy or sell in the future.* Generally, they are agreements which include an obligation for the debtor to do something in the future.

*In Re Jolly,* 574 F.2d 349, 350–51 (6th Cir.) (emphasis added), *cert. denied,* 439 U.S. 929, 99 S.Ct. 316, 58 L.Ed.2d 322 (1978). John Sloan, the Sloans, and Becknell had obligations to perform in the future. As a result, the Lease-Purchase Agreement was executory.

Because the Lease-Purchase Agreement was executory the Trustee should have been given the opportunity to assume or reject the contract. *See* 11 U.S.C. § 110. In the Bankruptcy proceedings the Trustee filed a petition for an extension of time to reject or assume the contract. The Bankruptcy Court, however, denied that petition as moot because it determined that the Lease-Purchase Agreement was not executory. The Trustee, therefore, did not have an opportunity to assume or reject the Lease-Purchase Agreement.

We, therefore, AFFIRM, in part, REVERSE, in part, and REMAND. We also deny appellee's previously-refused motion for bond increase. We note that our decision does not alter the provisions of the contract. As a result, Becknell must leave in place 300-foot blocks of coal at 1500-foot intervals. These blocks of coal as well as the surface rights were specifically reserved by the appellants.

**Cesar MOYA, Defendant-Appellant,**
v.
**UNITED STATES of America,
Plaintiff-Appellee.**

**No. 81–2225.**

United States Court of Appeals,
Seventh Circuit.

Sept. 21, 1984.

As Amended April 18, 1985.*

---

* This opinion supersedes the previous opinion rendered by the court. *Moya v. United States,* 745 F.2d 1044 (7th Cir.1984). The petition for rehearing in this case was denied by an order of the court on April 8, 1985 (amended April 12, 1985) in view of this amended opinion.

Coffey, Circuit Judge, filed dissenting opinion.

L. Mark Dachs, Miami, Fla., Steven B. Muslin, Steven B. Muslin, Ltd., Chicago, Ill., for defendant-appellant.

Ann C. Williams, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before CUDAHY and COFFEY, Circuit Judges, and SWYGERT, Senior Circuit Judge.

SWYGERT, Senior Circuit Judge.

Cesar Moya was convicted in the United States District Court for the Northern District of Illinois of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). *United States v. Moya*, 561 F.Supp. 1 (N.D.Ill.1981), *aff'd*, 704 F.2d 337 (7th Cir.), *vacated and remanded*, — U.S. ——, 104 S.Ct. 418, 78 L.Ed.2d 355 (1983). The district judge refused to suppress the evidence obtained from searching Moya's shoulder bag—501.77 grams of 35% cocaine—as "fruit of the poisonous tree." *Id.* at 3 (quoting *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)). He concluded that the law enforcement officers had reasonable suspicion that Moya was carrying contraband and that therefore they were justified in detaining Moya's shoulder bag for three hours before obtaining a valid search warrant and conducting a dog-sniff test.

The district judge's conclusion was based on the following facts. After deplaning, Moya surveyed the crowd, then walked toward the main terminal, periodically looking back over his shoulder as if trying to detect whether he was being followed. He entered a stall in a men's room and remained there for a few minutes without using the facilities. Although his only luggage was a shoulder bag, he hurriedly left the main terminal and did not go to the baggage claim area. When questioned by the law enforcement officers, Moya was hesitant to offer any identification. Finally, as he was reaching into the side pocket of his shoulder bag for identification, Moya exposed a corner of a clear plastic bag. Whey Moya was asked about the plastic

bag, he denied that it existed. 561 F.Supp. at 11. Ultimately, Moya produced the plastic bag containing drug paraphernalia after one of the officers threatened to forceably remove it from Moya's shoulder bag. But in his determination of reasonable suspicion, the district judge specifically refused to consider the drug paraphernalia found in the clear plastic bag because he found that evidence to be the result of an "unconstitutional, warrantless search." 561 F.Supp. at 9.

On appeal, a majority of this court affirmed. *United States v. Moya*, 704 F.2d 337 (7th Cir.), *vacated and remanded*, — U.S. ——, 104 S.Ct. 418, 78 L.Ed.2d 355 (1983). We agreed with the district judge that the evidence, excluding the contraband found in the clear plastic bag, supported a finding of reasonable suspicion. *Id.* at 343.

The Supreme Court vacated and remanded our decision for further consideration in light of *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). In *Place*, the Court held that a ninety-minute detention of luggage while awaiting the arrival of a trained narcotics detecting dog based upon less than probable cause violated the fourth amendment. *Id.* at 2645–46.

This court then sought additional briefing from the parties on the following points:

(1) Whether there was probable cause for the seizure of Moya's shoulder bag?

(2) Whether there was any legal justification for the warrantless seizure of the clear plastic bag from Moya's shoulder bag, in particular whether the plastic bag fit within the "plain view" exception to the warrant clause?

(3) Whether the three hour detention of Moya's shoulder bag could be persuasively distinguished from the ninety-minute detention that occurred in *Place?*

We now hold that the facts on which the district court based its finding of reasonable suspicion do not support a finding of

probable cause [1] and that the district court was correct in finding that the seizure of the plastic bag was unconstitutional, so that its contents cannot be considered in the determination of probable cause.

## I

### A

■ The implications for personal privacy resulting from a finding of probable cause require that the standard be rigorously enforced. Probable cause requires sufficient evidence to lead a reasonable and prudent person to believe, not merely suspect, that a crime has been or is being committed. *Brinegar v. United States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949). We must be especially cautious when the evidence that is alleged to establish probable cause is entirely consistent with innocent behavior. *See Reid v. Georgia,* 448 U.S. 438, 441, 100 S.Ct. 2752, 2754, 65 L.Ed.2d 890 (1980) (per curiam); *United States v. Saperstein,* 723 F.2d 1221, 1229 (6th Cir.1983). We find that the evidence available to the officers in this case was insufficient to lead a reasonable person to believe that a crime was being committed.

It is clear that the officers did not have probable cause at the time that they approached Moya in the taxicab line outside the airport. At that time the officers knew that Moya was arriving from Miami, had only carry-on luggage, scanned the crowd repeatedly, looked back over his shoulder, and "sought the privacy of a washroom stall for some reason other than a desire to relieve himself." *Moya,* 561 F.Supp. at 4. Indeed, this information was insufficient to establish even reasonable grounds for suspecting that Moya was carrying contraband. *Id.; see Reid,* 448 U.S. at 441, 100 S.Ct. at 2754 (reasonable suspicion not established by observations that suspects deplaned from a principal place of origin of cocaine for distribution, arrived in the early

morning when law enforcement activity is diminished, carried only shoulder bags, and attempted to conceal the fact that they were traveling together).

After being approached in the taxicab line, four events occurred that the district court found sufficient to give rise to reasonable suspicion. First, when asked for identification Moya responded that he had none. Then, when asked again for identification once inside the terminal, Moya proceeded to produce a driver's license from his shoulder bag. Third, while reaching into the bag, Moya exposed the corner of a clear plastic bag. Finally, when asked to produce the plastic bag, Moya responded that no plastic bag existed. *See Moya,* 561 F.Supp. at 8. These four events were not sufficient to give rise to probable cause.

■ Probable cause is not established either by failing to present identification upon request by a law enforcement officer, *see Brown v. Texas,* 443 U.S. 47, 52, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357 (1979); *United States v. Brown,* 731 F.2d 1491, 1494 *modified on other grounds,* 743 F.2d 1505 (11th Cir.1984), or by carrying a plastic bag in one's travel luggage, *see infra* at 326. The only question presented by the instant case is whether Moya's false responses to the officers concerning identification and the plastic bag gave the officers probable cause to believe he was engaged in criminal activity. There are several innocent explanations for a lack of forthrightness with law enforcement officers. A person could simply be mistaken or have forgotten; this explanation appears particularly plausible if one considers the stress that someone might reasonably feel when subjected to police questioning. Alternatively, a person could be attempting to conceal information that is personal or embarrassing but not criminal, or supplying answers that she or he believes will expedite the questioning process.[2] We conclude

---

1. Even if the officers had probable cause to believe Moya's bag contained contraband, there would be a question whether the three hour detention of the bag before seeking a search

warrant was reasonable. *See United States v. Saperstein,* 723 F.2d 1221, 1232 (6th Cir.1983).

2. We do not condone dishonesty with police officers. We *note,* however, that people are

that Moya's seeming dishonesty with the officers was insufficient to establish probable cause. *See also Place,* 103 S.Ct. at 2640, 2644 (no probable cause found although the defendant falsely reported to law enforcement officers that his luggage had already been searched by other officers).

## B

The district court found that the warrantless seizure of the plastic bag containing drug paraphernalia was unconstitutional and excluded the evidence from consideration in determining the reasonableness of the detention of the shoulder bag. *See Moya,* 561 F.Supp. at 8–9. We agree with the district court (and the government's position at trial) that the search was illegal and the contents must therefore be excluded from our probable cause determination.

 The district court correctly concluded that the plain view exception to the warrant clause was inapplicable to the seizure of the plastic bag, *see Moya,* 561 F.Supp. at 9 n. 6. The plain view doctrine authorizes the warrantless seizure of personal property where the initial intrusion which affords the officers a plain view is lawful, the discovery of the property is inadvertent, and the incriminating nature of the property is "immediately apparent." *Coolidge v. New Hampshire,* 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971) (plurality opinion); *United States v. McDonald,* 723 F.2d 1288, 1295 (7th Cir. 1983) *cert. denied,* —— U.S. ——, 104 S.Ct. 2360, 80 L.Ed.2d 831 (1984). The phrase "immediately apparent" does not "imply that an unduly high degree of certainty as to the incriminatory character of evidence is necessary for an application of the 'plain view' doctrine." *Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 1542, 75 L.Ed.2d 502 (1983). The character of the property must be such as to give the officers "probable

cause to associate the property with criminal activity." *Payton v. New York,* 445 U.S. 573, 587, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980); *see Brown,* 103 S.Ct. at 1542.

There is nothing apparently incriminating about a plastic bag. Plastic bags are used by travelers for a variety of innocent purposes. Bags are used, for example, to carry wet items, to contain items that may spill, and to keep items sanitary. The exposure of the corner of the clear plastic bag did not give the officers probable cause to believe that the plastic bag contained contraband. *Contrast Brown,* 103 S.Ct. at 1543 (the incriminating nature of a tied-off balloon "common[ly]" used to carry narcotics found sufficiently apparent); *id.* at 1545 (Powell, J., concurring) ("We are not advised of any innocent item that is commonly carried in uninflated, tied-off balloons such as the one ... seized.").

The district court's conclusion that the plain view exception is inapplicable to the seizure of the contents of the plastic bag is further supported by consideration of the principle underlying the exception. "The principle is grounded on the recognition that when a police officer has observed an object in 'plain view,'" the owner has no remaining privacy interest in the object. *Brown,* 103 S.Ct. at 1541. It is clear that Moya retained an expectation of privacy in the contents of his plastic bag even after exposing a corner of the bag.

## II

In *Place,* the Supreme Court found unreasonable the ninety-minute seizure of the defendant's luggage based only on the law enforcement officers' reasonable suspicion that the luggage contained contraband. The Court stated, "[W]e have never approved a seizure of the person for the prolonged 90-minute period involved here

---

entitled to refuse to provide information to the police. *See United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1879–83, 64 L.Ed.2d 497 (1980) (plurality opinion) (rationale for permitting investigative stops is that answers are consensual); *Miranda v. Arizona,* 384 U.S.

436, 458–65, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); U.S. Const.amend. V. Nevertheless, many people have difficulty forthrightly refusing to give police officers requested information.

and cannot do so on the facts presented by this case." 103 S.Ct. at 2646. The Court, however, "decline[d] to adopt any outside time limitation" beyond which all such seizures would be unreasonable, and left the question of the reasonableness of a detention for resolution on a case-by-case basis. *Id.* We find no persuasive grounds for distinguishing the three hour seizure of Moya's shoulder bag from the ninety-minute seizure disapproved in *Place.*

■ The officers who apprehended Moya admitted that they stationed themselves at the airport specifically to investigate the transportation of illicit drugs. Under these circumstances, we believe it is reasonable to expect officers to arrange to have a narcotics detecting dog readily available. *See also United States v. Puglisi,* 723 F.2d 779, 791 (11th Cir.1984) (three hour detention of luggage while awaiting canine sniff-test unreasonable where officer had alternatives of having trained dog at airport or directing agents in the destination terminal to conduct the search); *cf. United States v. Sanders,* 719 F.2d 882, 887 (6th Cir.1983) (detention found unreasonable where no explanation why agents did not arrange to conduct investigation at airport); *United States v. West,* 651 F.2d 71 (1st Cir.), *vacated and remanded,* 463 U.S. 1201, 103 S.Ct. 3528, 77 L.Ed.2d 1382 (1983) (remanding to district court question why agents did not have trained dog in immediate vicinity). In fact, the record in the instant case indicates that Moya's shoulder bag was eventually tested by a dog from the United States Customs Department located in the airport's international terminal; there is no explanation why it took three hours to transport the luggage from one terminal to another. *See* Transcript of December 1, 1980, at 32–33.

In addition, the Court in *Place* found the unreasonableness of the search exacerbated by the officers' failure to inform the

defendant where his luggage was being detained or how long the detention would last and to make arrangements for the return of the luggage if the sniff-test was negative. 103 S.Ct. at 2646. *See also Saperstein,* 723 F.2d at 1233 n. 18. The officers acted similarly unreasonably with respect to the seizure of Moya's luggage.

We recognize that in *Place* the New York law enforcement officers were given advance notice by agents in Miami that the defendant, a suspected drug courier, was going to arrive. The Supreme Court held that the diligence with which law enforcement officers pursue an investigation is one factor, although not the only factor, to be considered in assessing the reasonableness of a detention. The Court concluded that the officers involved in *Place* were less than diligent because they could have, but failed to, "arrange for their additional investigation ..., thereby ... minimiz[ing] the intrusion on respondent's Fourth Amendment interests." *Place,* 103 S.Ct. at 2645–46. Because the officers had alternatives that would have minimized the intrusion on Moya's fourth amendment interests, we do not find persuasive the fact that the officers had no advance warning that Moya would be arriving at the airport.

The judgment of the district court is vacated and remanded with instructions to suppress all evidence seized from Moya's shoulder bag.

COFFEY, Circuit Judge, dissenting.[1]

I dissent from the majority's glossed over representation of the facts as initially found by the district court in *United States v. Moya,* 561 F.Supp. 1, 2–3 (N.D.Ill.1981) and as later set forth by this court in *United States v. Moya,* 704 F.2d 337, 339–40 (7th Cir.1983), because the facts are vital to a proper determination of probable cause. I further dissent from the majori-

---

1. The majority initially held that "the government waived its claims that the officers had probable cause and that the seizure of the clear plastic bag fits within the 'plain view' exception to the warrant requirement." *United States v. Moya,* 745 F.2d 1044, 1048 (7th Cir.1984). A majority of the judges in regular active service on this court voted to grant rehearing *en banc* on this erroneous waiver analysis, and thus in the present opinion the majority has withdrawn the waiver analysis.

ty's absolute refusal to apply the plain view doctrine recently enunciated by the United States Supreme Court in *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) and this court in *United States v. McDonald*, 723 F.2d 1288 (7th Cir.1983). Moreover, I dissent from the majority's failure to rule, as a matter of law, that in view of the totality of the circumstances presented in this case, the law enforcement officers had probable cause to seize Moya's shoulder bag, obtain a search warrant, and uncover 501.77 grams of 35% pure cocaine, valued at between $40,000 and $50,000.

The Supreme Court has recognized that each airport encounter involving the seizure of luggage believed to contain narcotics is unique and must be decided upon its particular facts and circumstances. *See United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 2646, 77 L.Ed.2d 110 (1983). *Cf. Florida v. Royer*, 460 U.S. 491, 506–07, 103 S.Ct. 1319, 1329, 75 L.Ed.2d 229 (1983) (same rule applies to airport encounters involving the seizure of person believed to be carrying narcotics). The facts in this case, as found by the district court in *United States v. Moya*, 561 F.Supp. at 2–3, reveal that on March 20, 1980, Agent Labik of the Drug Enforcement Administration ("DEA") and Officer Kinsella of the Chicago Police Department were stationed at O'Hare International Airport to monitor passengers arriving from certain cities considered to be "sources" for the illegal drug traffic in Chicago, Illinois. At approximately 7:35 p.m., Labik and Kinsella observed the defendant, Cesar Moya, deplaning from Delta Flight 142, a nonstop flight originating in the "source" city of Miami, Florida. The officers observed Moya exit the arrival gate carrying a shoulder bag, walk across the concourse, suspiciously survey the crowd, and proceed toward the main terminal, repeatedly glancing backwards over his shoulder. Based upon

years of experience in detecting drug couriers at O'Hare International Airport, Officers Labik and Kinsella were convinced that Moya fit the "drug courier profile," and thus followed Moya in close pursuit.[2] Before reaching the main terminal, Moya, followed by Agent Labik, entered a public restroom, discovered that all of the enclosed stalls were occupied, and exited. Upon reaching the main terminal, Moya, this time followed by Officer Kinsella, entered another public restroom, found an open stall, entered, closed the door, stood there for several minutes, and again exited without using the facilities. Moya proceeded to the escalator opposite the Delta Airlines ticket counter and at the moment he made eye contact with Labik and Kinsella, boarded the down-escalator. When he reached ground level, Moya bypassed the baggage claim area, exited the terminal, and entered a cab line while still carrying his shoulder bag.

Labik and Kinsella, who were dressed in plain clothes, approached Moya in the cab line, identified themselves as law enforcement officers, and asked Moya, in a "relaxed" tone of voice, if they could speak with him. Moya agreed without hesitancy, and Officer Kinsella proceeded to ask for identification. Moya denied having any identification, but agreed, again without hesitancy, to move inside the terminal building to avoid the pedestrian traffic and the night chill. The officers and Moya entered the terminal and stationed themselves in a public foyer, between the primary and secondary exit doors, where questioning resumed. The officers asked Moya his name and he replied "Cesar Moya." Officer Kinsella next asked to see Moya's airline ticket, Moya agreed, and produced a one-way ticket from Miami, Florida to Chicago, Illinois, on Delta Flight 142, in the name of Cesar Moya. After

---

**2.** The "drug courier profile" consists of characteristics typically associated with couriers of illegal narcotics, as determined by experienced, well-trained DEA agents. The "drug courier profile" is widely used by DEA agents to initiate observation and surveillance of suspected drug couriers at airports throughout the nation. This

practice is well-recognized and accepted by Federal courts. *See Florida v. Royer*, 460 U.S. 491, 493 n. 2, 103 S.Ct. 1319, 1322 n. 2, 75 L.Ed.2d 229 (1983); *United States v. Goldstein*, 635 F.2d 356, 360 n. 4 (5th Cir.), *cert. denied*, 452 U.S. 962, 101 S.Ct. 3111, 69 L.Ed.2d 972 (1981).

examining the ticket, Agent Labik asked Moya for further identification. Moya inquired "what was this all about." Labik, ignoring Moya's comment, again asked for further identification and Moya responded by unzipping a side pocket of his shoulder bag, reaching into the pocket, and producing a Florida driver's license in his name and with his picture thereon. When Moya reached into the side pocket of his shoulder bag, Labik observed "a clear plastic bag" in plain view. Labik asked Moya to remove the plastic bag, Moya refused, insisting that he did not have a plastic bag, and Labik replied that if Moya did not remove the plastic bag, he (Labik) would. At that point, Moya reached into the side pocket of his luggage and removed the clear plastic bag which, according to Agent Labik's testimony, contained "12, 14 other clear plastic bags that were rolled up and three small brown bottles that had black lids on them and onto each lid, each cap, was attached a small chain and a small gold spoon." Moya, giving a phony explanation, stated that he used the contents of the bag for jewelry, however, the well-trained and experienced Agent Labik recognized, at once, that the clear plastic bag contained narcotics paraphernalia.

The officers seized Moya's shoulder bag, returned to their airport headquarters, and detained the luggage for purposes of obtaining a search warrant. At approximately 8:15 p.m., Agent Labik contacted the United States Customs Office and requested a trained canine to "sniff test" Moya's shoulder bag for narcotics. Some three hours later, at approximately 11:00 p.m., the trained canine arrived on the scene, and from a lineup of six similar pieces of luggage, picked out Moya's shoulder bag. About one-and-a-half hours later, at 12:35 a.m., the officers obtained a valid search warrant from a state court judge in Chicago, opened the shoulder bag, and uncovered 501.77 grams of 35% pure cocaine, valued at between $40,000 and $50,000.

At the outset it is important to note that the majority does not, and legally cannot,

dispute the district court's holding in *United States v. Moya*, 561 F.Supp. at 7 that "no constitutional seizure of Moya's person occurred in this case." Similarly, the majority does not, and legally cannot, dispute the original holding by a majority of this panel (Judges Cudahy and Coffey with Judge Swygert dissenting) in *United States v. Moya*, 704 F.2d at 342, that, "[b]ased on the factors outlined by this court in [*United States v. Black*, 675 F.2d 129, 132–36 (7th Cir.1982), *cert. denied*, 460 U.S. 1068, 103 S.Ct. 1520, 75 L.Ed.2d 945 (1983)], we affirm the district court's conclusion that no seizure occurred during the 'personal intercourse' between Moya and the law enforcement officers and a 'reasonable person' would have believed that he was free to leave." Indeed, the district court found that:

> "the undisputed testimony shows that Labik and Kinsella did not engage in any show of force in approaching Moya, that they did not lay hands on him at any time, and that Moya showed no hesitancy in agreeing to respond to their questions or in agreeing to remove himself from the taxi line and enter the terminal foyer. Moreover, Moya himself characterized the officers' tone of voice and attitude as 'relaxed' throughout the encounter."

*United States v. Moya*, 561 F.Supp. at 5. The record contains no evidence suggesting that Moya was naive or vulnerable to coercion and, moreover, Moya was free at all times to walk away from the officers, which he eventually did when Officers Labik and Kinsella detained his shoulder bag. Accordingly, Moya's person was not seized, *see Florida v. Royer*, 460 U.S. at 501–02, 103 S.Ct. at 1326; *United States v. Mendenhall*, 446 U.S. 544, 553–55, 100 S.Ct. 1870, 1876–77, 64 L.Ed.2d 497 (1980) (opinion of Stewart, J.); *United States v. Notorianni*, 729 F.2d 520, 522 (7th Cir.1984); *United States v. Black*, 675 F.2d at 134–36, and the sole issue presently before this panel is whether the law enforcement officers properly seized Moya's shoulder bag.[3]

---

**3.** The Supreme Court's analysis in *Reid v. Georgia*, 448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed.2d 890

The district court issued its opinion in this case on May 7, 1981. According to the law in this circuit at the time, an officer could detain luggage if he "had reasonable suspicion to believe the bags contained contraband." *United States v. Klein*, 626 F.2d 22, 26 (7th Cir.1980) ("*Klein*"). The district court found that:

> "by the time that Moya initially failed to produce the plastic bag, he had given Labik and Kinsella several grounds for suspecting that his travel bag contained contraband: His behavior in walking from the arrival gate to the taxi stand was sufficient to arouse the officers' inchoate suspicions. After they approached Moya and began to question him, these inchoate suspicions had been sharpened by the disclosure that Moya was hesitant to provide them with information about his identity and by the disclosure that Moya was carrying a plastic bag whose contents he wished to keep a secret."

*United States v. Moya*, 561 F.Supp. at 8. In view of this evidence, the district court denied Moya's motion to suppress and ruled that Officers Labik and Kinsella lawfully seized Moya's shoulder bag because they had " 'reasonable and articulable' grounds for suspecting" that the luggage contained contraband. *Id.* The district court, in ruling that reasonable suspicion existed and that the cocaine found in Moya's luggage could be introduced at trial, refused to consider the drug paraphernalia discovered by Agent Labik in the clear plastic bag that he observed in plain view. The district court concluded that, based upon the relevant case law in existence at the time, "the order compelling Moya to disclose the contents of his shoulder bag amounted to an unconstitutional warrantless search," because, according to the Supreme Court in *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), "plain view *alone* is never enough to justify the warrantless seizure of evidence." 403 U.S. at 468 (emphasis original). *See United States v. Moya*, 561 F.Supp. at 9, n. 6.[4] On appeal, this court ruled that "the officers had a reasonable suspicion to believe that Moya's travel bag contained contraband even before Moya turned the plastic bag over to them." *United States v. Moya*, 704 F.2d at 343. Thus, we held that under the legal analysis of *Klein*, Officers Labik and Kinsella lawfully seized Moya's shoulder bag. Because of this holding, we had no reason to address the district court's conclusion that the plain view doctrine was inapplicable to the seizure of the clear plastic bag.

The Supreme Court remanded the case for reconsideration in light of its decision in *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983) ("*Place*"). In *Place*, the Court held that the ninety minute detention of luggage, based solely upon a reasonable suspicion that the luggage contained narcotics, constituted an unreasonable seizure in violation of the Fourth Amendment. In the present case, the majority mistakenly concludes that the police officers had only reasonable suspicion, and not probable cause, to seize Moya's shoulder bag. Thus, the majority reasons that the three hour detention of Moya's luggage, based solely upon reasonable suspicion, violates the standards of *Place*. In my opinion, the majority's reliance upon *Place* is legally unsound and factually inaccurate. I am firmly con-

(1980) (per curiam) and *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), concerned the *seizure of a person* believed to be carrying narcotics, not the *seizure of luggage* believed to contain narcotics. In the instant case, it is clear that Moya's person was not seized and thus, the Supreme Court's analysis in *Reid* and *Mendenhall* is inapplicable to the issue before this panel.

**4.** I note that some two years after the district court's decision, the Supreme Court, in *Texas v.*

*Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983), interpreted the phrase "plain view alone is never enough to justify the warrantless seizure of evidence" to mean that "in order for the plain-view doctrine to apply, a police officer must be engaged in a lawful intrusion or must otherwise legitimately occupy the position affording him a 'plain view.' " 460 U.S. at 737 n. 3, 103 S.Ct. at 1540 n. 3. *See* discussion in text, *infra*.

vinced that, combining the totality of the circumstances with the proper legal application of the plain view doctrine, the police officers had probable cause to seize Moya's shoulder bag. Accordingly, *Place* is irrelevant to the disposition of this case because it is limited to and applies only to the seizure of luggage based upon reasonable suspicion, a legal test completely separate and distinct from the probable cause evident in this case.

I initially note that neither the district court nor this court, on appeal, had any reason to address the probable cause issue, given this circuit's ruling in *Klein* that reasonable suspicion of narcotics is sufficient to detain a traveler's luggage. Nevertheless, the district court's thorough and exhaustive factual findings concerning Moya's conduct at O'Hare International Airport provide a more than adequate basis for this court to rule on the legal issue of probable cause. Indeed, all we need do is apply the relevant legal principles of probable cause to the district court's factual findings. According to the Supreme Court in *Singleton v. Wulff*, 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976), "[t]he matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases." 428 U.S. at 121, 96 S.Ct. at 2877–78. In view of the district court's factual findings concerning Moya's airport conduct, this is a case where the "appellate court is justified in resolving an issue not passed on below." *Id.*

This court has already ruled that Officers Labik and Kinsella had reasonable suspicion to believe that Moya's luggage contained narcotics, even before the officers viewed the contents of the clear plastic bag. *United States v. Moya*, 704 F.2d at 343. Added to this reasonable suspicion of narcotics was agent Labik's observation, *in plain view*, of a clear plastic bag that Moya emphatically and blatantly denied being present in the unzipped side pocket of his luggage. At the time of Moya's outright lie concerning the presence of a clear plastic bag in his luggage, Officers Labik

and Kinsella knew that Moya deplaned from Delta Flight Number 142, a non-stop flight originating in Miami, Florida, a "source city" for the illegal drug traffic in Chicago. The officers further observed Moya walk across the concourse, suspiciously survey the crowd, and nervously proceed down the concourse, repeatedly glancing backwards over his shoulder. The well-trained, experienced officers determined that Moya's appearance, demeanor, behavior, and actions all fit the "drug courier profile." Thus, the officers trailed Moya as he entered one public restroom and exited without using the facilities, then entered a second public restroom, closed the door to his private stall, stood there for several minutes, and again exited without using the facilities, all in an obvious effort to frustrate and elude attempted surveillance. At the moment Moya made eye contact with the officers, he immediately boarded the down escalator and fled outside the terminal into a cab line, claiming no luggage and carrying only his shoulder bag. When Officers Labik and Kinsella approached Moya and asked for identification, he deliberately lied, initially responding that he had none but later producing a driver's license in the name of Cesar Moya, with his picture thereon. Further, when asked to remove the clear plastic bag in plain view from the side pocket of his luggage, Moya deliberately lied a second time, responding that he had no plastic bag.

Moya's "drug courier profile," his suspicious, nervous, and elusive actions in O'Hare International Airport, his lie concerning identification, and his deliberate lie that he did not have a plastic bag, even though it was in plain view, clearly suggest that Moya was involved in some type of drug trafficking and that the clear plastic bag, in plain view, contained evidence of an incriminating nature. Nevertheless, the district court, relying upon the Supreme Court's statement in *Coolidge v. New Hampshire* that " 'plain view' *alone* is never enough to justify the warrantless seizure of evidence," ruled that the plain view doctrine did not allow for seizure of the

clear plastic bag. *United States v. Moya,* 561 F.Supp. at 9 n. 6 (emphasis original). The district court reasoned, as does the majority, that a clear plastic bag, by itself, is not sufficient to invoke the plain view doctrine. I note that the district court issued its decision in May 1981, but some two years later, in April 1983, the Supreme Court, in *Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (*"Brown"*), reanalyzed the plain view doctrine and clarified the law concerning our nation's ever-increasing drug problem. In *Brown,* the Court interpreted the phrase from *Coolidge* that "plain view alone is never enough to justify the warrantless seizure of evidence," to mean that "in order for the plain-view doctrine to apply, a police officer must be engaged in a lawful intrusion or must otherwise legitimately occupy the position affording him a 'plain view.'" *Brown,* 460 U.S. at 737 n. 3, 103 S.Ct. at 1540 n. 3. In the present case, there is no question that Officers Labik and Kinsella lawfully "occupied the position affording them a plain view," as Moya freely consented and agreed to answer the questions of the officers while standing in the public foyer of the airport terminal. Thus, in view of the Supreme Court's subsequent decision in *Brown,* the district court's rationale for not applying the plain view doctrine to the seizure of the clear plastic bag is misplaced, and I believe that we are now compelled to analyze the facts of this case under the plain view doctrine enunciated in *Brown.*

In *Brown,* the Court explained that:

" 'plain view' provides grounds for seizure of an item when an officer's access to an object has some prior justification under the Fourth Amendment. 'Plain view' is perhaps better understood, therefore, not as an independent 'exception' to the Warrant Clause, but simply as an extension of whatever the prior justification for an officer's 'access to an object' may be."

460 U.S. at 738–39, 103 S.Ct. at 1542 (footnote omitted). Since the *Brown* decision, this court has interpreted the plain view

doctrine to allow for the warrantless seizure of evidence if:

"(1) the initial intrusion which afforded the authorities the plain view was lawful;

(2) the discovery of the evidence was inadvertent; and

(3) the incriminating nature of the evidence was immediately apparent."

*United States v. McDonald,* 723 F.2d 1288, 1295 (7th Cir.1983) (*"McDonald"*) (citing *United States v. Schire,* 586 F.2d 15, 17 (7th Cir.1978)). *See also United States v. Reed,* 726 F.2d 339, 343 (7th Cir.1984). In *Brown,* the Supreme Court clarified that it does "not view the 'immediately apparent' language ... as establishing any requirement that a police officer 'know' that certain items are contraband or evidence of a crime." 460 U.S. at 741, 103 S.Ct. at 1542. Instead, the Court determined that "probable cause to associate the property with criminal activity" is sufficient to satisfy the third prong of the "plain view" test. *Id.* at 741–42, 103 S.Ct. at 1542–43 (quoting *Payton v. New York,* 445 U.S. 573, 587, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980)). *See also McDonald,* 723 F.2d at 1295. According to the Court in *Brown:*

"probable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief,' *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925), that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. *A 'practical, nontechnical' probability that incriminating evidence is involved is all that is required. Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949)."

460 U.S. at 742, 103 S.Ct. at 1542–43 (emphasis added). *See also McDonald,* 723 F.2d at 1295. The Supreme Court has added that "probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such

activity." *Illinois v. Gates,* 462 U.S. 213, 244 n. 13, 103 S.Ct. 2317, 2335, 76 L.Ed.2d 527 (1983).

The facts in the present case satisfy all three prongs of the plain view test, as that test has been interpreted by the Supreme Court in *Brown* and this court in *McDonald.* Moya freely agreed to speak with Officers Labik and Kinsella while standing in a public foyer of the airport terminal, and during the course of this conversation Moya voluntarily unzipped the side pocket of his luggage exposing the clear plastic bag in plain view. Thus, the initial intrusion affording Agent Labik access to observe Moya's luggage, and the clear plastic bag in plain view, was lawful and justified under the Fourth Amendment. Furthermore, Agent Labik's discovery of the clear plastic bag was completely inadvertent, as he did not view the bag until Moya, on his own initiative and in search of identification that he earlier denied existed, unzipped the side pocket of his luggage, affording the officer a plain view. Finally, even though a clear plastic bag may be used for a multitude of noncriminal purposes, it is common knowledge that such a bag is frequently used to stash illegal narcotics and, as it was in this case, to store narcotics paraphernalia. In light of the facts available to Agent Labik, including Moya's "drug courier profile," his repeated suspicious, nervous, and elusive actions at O'Hare International Airport, his lie concerning identification, and his deliberate lie that he had no plastic bag, even though it was in plain view, there certainly was a "practical, nontechnical" probability that the clear plastic bag contained incriminating evidence. Indeed, the only logical explanation for Moya's adamant denial of the clear plastic bag in plain view is that Moya wanted to conceal the bag, and its contents, from Agent Labik because it contained incriminating evidence. Thus, in line with the flexible, common sense standard of plain view set forth by the Supreme Court in *Brown* and this court in *McDonald,* and in view of the totality of the circumstances presented in this case, Agent Labik properly seized the clear plastic bag under the plain view doctrine. *See Brown,* 460 U.S. at 742–44, 103 S.Ct. at 1542–44 (opaque balloon frequently used to carry narcotics properly seized under plain view doctrine).

Having established that Agent Labik properly seized the clear plastic bag, and viewed its contents, under the plain view doctrine, I turn to the issue of whether Agent Labik had probable cause to seize Moya's luggage. The relevant case law establishes that probable cause is a flexible, practical, common sense standard that requires facts sufficient " 'to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Brinegar v. United States,* 338 U.S. at 175–76, 69 S.Ct. at 1310–11 (quoting *Carroll v. United States,* 267 U.S. at 162, 45 S.Ct. at 288). *See also Texas v. Brown,* 460 U.S. at 742, 103 S.Ct. at 1542–43; *Dunaway v. New York,* 442 U.S. 200, 208 n. 9, 99 S.Ct. 2248, 2254 n. 9, 60 L.Ed.2d 824 (1979); *United States v. Garza-Hernandez,* 623 F.2d 496, 499 (7th Cir.1980). Probable cause "is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates,* 462 U.S. at 232, 103 S.Ct. at 2328. Thus, "[i]n dealing with probable cause, ... as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar v. United States,* 338 U.S. at 175, 69 S.Ct. at 1310. *See also Illinois v. Gates,* 462 U.S. at 231, 103 S.Ct. 2328; *United States v. Covelli,* 738 F.2d 847, 853 (7th Cir.), *cert. denied,* — U.S. ——, 105 S.Ct. 211, 83 L.Ed.2d 141 (1984); *United States v. Watson,* 587 F.2d 365, 368 (7th Cir.1978), *cert. denied,* 439 U.S. 1132, 99 S.Ct. 1055, 59 L.Ed.2d 95 (1979). In making a determination of probable cause, "the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." *Illinois v. Gates,* 462 U.S. at 244 n. 13, 103 S.Ct. at 2335, n. 13.

The record in this case reveals that Agent Labik had sufficient facts, information, and knowledge, including Moya's "drug courier profile," his suspicious, nervous, and elusive actions in O'Hare International Airport, his repetition of lies, including his misstatement that he had no identification and his emphatic denial of the clear plastic bag in plain view, and the presence of drug paraphernalia in that clear plastic bag, "to warrant a man of reasonable caution in the belief" that a crime involving the transportation of narcotics was taking place. In view of Agent Labik's observations, probable cause clearly existed to believe that Moya's luggage contained narcotics. *See United States v. Large*, 729 F.2d 636, 639–40 (8th Cir.1984) (probable cause to seize luggage based on corroborated information of confidential informant, defendant's pattern of behavior in airport, and defendant's nervousness during investigatory stop); *United States v. Jodoin*, 672 F.2d 232, 233–36 (1st Cir.1982) ("direct lies and peculiar statements ... together with nervous behavior, a brief 17-hour Florida stay, cash ticket payments, midnight plane rides, no phone number and other behavior which fit the ... drug courier profile ... warrant the finding of probable cause...."). Thus, Agent Labik properly seized Moya's luggage, obtained a search warrant, and uncovered 501.77 grams of 35% pure cocaine, valued at between $40,000 and $50,000.

It is evident that the positive "sniff test" performed by the trained canine does not affect the legality of the search, for as the Supreme Court stated in *Place*, a canine "sniff test" of this nature does "not constitute a 'search' within the meaning of the Fourth Amendment." 103 S.Ct. at 2645. *See also United States v. Goldstein*, 635 F.2d 356, 360 (5th Cir.1981) and cases cited therein. The positive "sniff test" simply served to substantiate the already present probable cause that was necessary to obtain a search warrant in the first instance. Moreover, once Officers Labik and Kinsella had probable cause to believe that Moya's luggage contained narcotics, the delay in obtaining the search warrant was reasonable and in accord with the Fourth Amendment. *See United States v. Jodoin*, 672 F.2d at 233–36 (overnight detention of luggage based upon probable cause is permissible). In contrast to the probable cause existing in this case, the Supreme Court in *Place* was dealing with a luggage detention based solely upon reasonable suspicion. The Court's concern with the length of the luggage detention resulted from the fact that the law enforcement officers had only a reasonable suspicion to conduct an "investigative stop." 103 S.Ct. at 2645. Officers Labik and Kinsella had probable cause to believe that Moya's luggage contained narcotics, and thus the detention of Moya's luggage was for the purpose of obtaining a search warrant, not for the purpose of conducting a brief investigative stop.

In *United States v. Mendenhall*, Justice Powell realized that:

"[t]he public has a compelling interest in detecting those who would traffic in ... drugs for personal profit. Few problems affecting the health and welfare of our population, particularly our young, cause greater concern than the escalating use of controlled substances. Much of the drug traffic is highly organized and conducted by sophisticated criminal syndicates. The profits are enormous. And many drugs, including [cocaine], may be easily concealed. As a result, the obstacles to detection of illegal conduct may be unmatched in any other area of law enforcement."

446 U.S. at 561–62, 100 S.Ct. 1881 (opinion of Powell, J.). In the present case, Agent Labik and Officer Kinsella performed their drug enforcement duties in an exceptionally skilled and proper manner, fully comporting with the law. The record reveals that at the time that Agent Labik seized Moya's luggage, he had probable cause to believe that such luggage contained narcotics. Before conducting a search of the luggage, Officers Labik and Kinsella, interested in protecting Moya's constitutional rights, followed proper legal procedures and sought the "detached scrutiny of a neutral magistrate, which is a more reliable safeguard against improper searches than

the hurried judgment of a law enforcement officer 'engaged in the often competitive enterprise of ferreting out crime.' " *United States v. Chadwick,* 433 U.S. 1, 9, 97 S.Ct. 2476, 2482, 53 L.Ed.2d 538 (1977) (quoting *Johnson v. United States,* 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948)). As soon as the state court judge issued a valid search warrant, Agent Labik opened the shoulder bag and uncovered 501.77 grams of 35% pure cocaine valued at between $40,000 and $50,000. Based upon a thorough review of the facts and circumstances surrounding the seizure of Moya's luggage, I conclude that Officers Labik and Kinsella had probable cause to seize Moya's luggage. Accordingly, the seizure of Moya's luggage and the subsequent search thereof, pursuant to a valid search warrant, were reasonable and in accord with the Fourth Amendment. I dissent from the majority's glossed over representation of the facts and their refusal to accurately analyze the facts and circumstances of this case, which are vital to a proper determination of probable cause. I also dissent from the majority's refusal to apply the plain view doctrine enunciated by the Supreme Court in *Brown* and this court in *McDonald,* and their failure to rule, as a matter of law, that the law enforcement officers had probable cause to seize Moya's shoulder bag.