**UNITED STATES of America, Plaintiff,**

v.

**Stephen FAILLA, Defendant.**

**No. 84 CR 454.**

United States District Court, N.D. Illinois, E.D.

June 14, 1985.

Gillum Ferguson, Asst. U.S. Atty., Chicago, Ill., for the U.S.

James Halloway, Chicago, Ill., for Stephen Failla.

## DECISION ON DEFENDANT'S MOTION TO SUPPRESS

McMILLEN, District Judge.

On April 3, 1985 the magistrate filed her thorough report recommending that defendant's motion to suppress be granted. Thereafter, the parties filed objections and incorporated their arguments and authorities in the objections. The defendant's document was not filed until April 30, 1985. Since this motion requires a *de novo* review of the magistrate's foregoing report, we find that the running of the Speedy Trial Act was suspended until at least thirty (30) days after April 30, 1985. 28 U.S.C. § 636(b)(1).

The most strenuous objections are those filed by the government, since its prosecution of the defendant would probably be terminated by the magistrate's recommendation. The prosecution contends that a finding that the defendant's flight bag was detained for one hour and fifteen minutes on the officers' suspicion that it might contain a controlled substance is not supported by the record (Report pp. 3–7). There are other objections also which we will allude to.

The question of when the detention occurred is controlled by *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). Therein the Court stat-ed that a suspect's luggage is seized, for purposes of the Fourth Amendment, when, following a suspect's refusal to consent to a search, the agent tells the suspect that he is going to take the luggage to a federal judge to secure issuance of a warrant. In that case a sniff test occurred after 90 minutes of detention. This was held to be unreasonable under *Terry* because it was more than "minimally intrusive" on the defendant's rights (at p. 709, 103 S.Ct. at p. 2645).

Actual surrender of physical possession is not required, but no cases have distinguished between detention of the suspected luggage and detention of the suspect. In this case the suspect left the airport at some time not specified in the evidence, but this apparently makes no difference. See also *United States v. Sharpe*, — U.S. —, 105 S.Ct. 1568, 1575–76, 84 L.Ed.2d 605 (1985). The test is whether the detention was minimally intrusive under all the circumstances.

The defendant was notified that his bag was going to be held for a sniff when he was en route to Gate E–2 in O'Hare Airport. C.P.D. Officer Burzinski made the request in the presence of Drug Enforcement Agent Ekman. This seems to have occurred at 12:45 o'clock p.m., although the magistrate found it to be at 12:40 o'clock p.m. The difference is between the time when defendant exited the men's room (12:40) and when he arrived at the vicinity of Gate F–7 (about five minutes later).

Agent Davis did not go to the D.E.A. office in the airport to call for a dog until 1:10 o'clock p.m. The dog did not arrive until 40 minutes later, at approximately 1:50 o'clock p.m. This is at least as much time as it would take to bring the dog out from the Loop. It sniffed out the defendant's bag at 1:55 o'clock p.m. The difference between the magistrate's finding of elapsed time of 75 minutes or our finding of not *less* than 65 minutes is not significant, as a matter of law.

The difficulty with the agents' procedure was that, after detaining the defendant and his bag at about 12:45 o'clock p.m., the dog and his custodian did not arrive until 1:50

o'clock p.m. In *Moya v. United States*, 761 F.2d 322 (7th Cir.1985), the court said at p. 327:

> The officers who apprehended Moya admitted that they stationed themselves at the airport specifically to investigate the transportation of illicit drugs. Under these circumstances, we believe it is reasonable to expect officers to arrange to have a narcotics detecting dog readily available. [citations omitted]

There can be no real doubt that the officers in this case did not conform to the standards set down by the Seventh Circuit in *Moya*. The same result, suppression of the evidence, must therefore follow, even though the events in this case took place before *Moya* was decided. After the officers first detained the defendant's bag at 12:40 or 12:45 p.m., the D.E.A. delayed for almost a half hour before calling for the dog. An additional 40 minutes expired before the dog arrived. This is not reasonable diligence at the O'Hare Airport where drug enforcement agents and specialized police officers are stationed almost continuously for the purpose of detaining suspicious persons and their luggage. Thus, because the constables blundered, the defendant may go free.

■ The government attempts to salvage this outcome by arguing that the defendant was stopped for probable cause, not on the basis of reasonable suspicion. Under *United States v. Place, supra*, however, similar circumstances were held to authorize a *Terry* stop. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A 90-minute detention of luggage in that case was held to be unreasonable. In the case at bar, the principal grounds for stopping the defendant was the D.E.A. drug courier profile and the fact that the defendant was allegedly nervous when he was being interrogated. That he may have lied concerning his travelling companions and place of residence (Report p. 5) did not come to light until after his bag had been detained, and the other grounds for detention of the defendant's bag did not go beyond those justifying a *Terry* stop. *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).

Defendant objects to the finding that his driver's license may have been expired when he handed it to Officer Burzinski. Actually there is no dependable evidence that the license had expired, and Officer Burzinski said that she was not sure. Neither she nor Agent Ekman mention this in their reports. Therefore, we sustain the defendant's objection to the magistrate's finding that the defendant's driver's license had expired.

On the other hand, the defendant's contention that even reasonable suspicion did not exist is not supported by the evidence, nor by *Royer* nor by the magistrate's finding nor by the government's contention. Her findings are supported not only by *Royer* but also by the majority opinion in *Moya, supra*, p. 324.

With the foregoing exception, the magistrate's report and recommendation dated April 3, 1985 is adopted and the objections of the government are overruled. The other recommendations of the magistrate are not objected to and are not erroneous. In order to ascertain the government's position in view of the foregoing decision on suppression, this case will be called for a status report on Monday, June 24, 1985 at 11:00 o'clock a.m.